RAIKE, Respondent, v. THE MANHATTAN RUBBER MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, December 3, 1907.

PRINCIPAL AND AGENT: Scope of Authority. Where a contract of employment gave a managing agent no authority to employ other agents, but a letter to him from his principal stated that the principal looked to him for results, leaving ways and means in his hands, and would leave matters in his territory (composing several States) entirely to him, and it was shown that such managing agent, with the approval of his principal, employed salesmen to operate in his territory, these were facts from which the trial court was justified in finding that the managing agent had actual authority to employ other agents to operate in the territory under his charge.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*Morton Jourdan* for appellant.

(1) There was no authority upon the part of Watrous to enter into the contract of December 12, 1902 with the plaintiff. This is shown by the contract itself. It limited Watrous' employment to the St. Louis store. He was employed as manager of their St. Louis store. Vogel v. St. Louis Museum, Opera & Fine Art Gallery, 8 Mo. App. 587; Atelee v. Fink, 75 Mo. 100. (2) There was no authority for him to agree to pay this appellant

the sum of $100 per month as additional allowance. There was no authority for him to employ the plaintiff and permit him to carry and sell and to devote a portion of his time to the sale of other lines of goods.  Boogher v. Insurance Co., 6 Mo. App. 592; Bensberg v. Harris, 46 Mo. App. 404.

*Wadlow & Gladney* for respondent.

The demurrer was properly overruled.  The proof was abundant to show the authority of Watrous.  Whatever limitations and restrictions were placed on his authority by the contract of October 1, 1902, were unknown to respondent.  A principal cannot hold out an agent as one having general powers, and then escape liability for acts of the agent by proof of secret and private limitations upon the agent's authority.  This is a fundamental principle of the law of agency.  Kinealy v. Burd, 9 Mo. App. 362; Wooden Mills v. Meyers & Co., 43 Mo. App. 130; Flint Walling Mfg. Co. v. Ball, 43 Mo. App. 512; Mechem on Agency, section 279.

GOODE, J.—This action was instituted by plaintiff to recover a salary alleged to be due him from the defendant for a year's employment.  The contract of employment relied on was in a writing, dated December 12, 1902, signed by the plaintiff for himself and by the defendant company by "E. P. Watrous, Manager," and witnessed by Dwight D. Johnson.  At the time the writing was signed plaintiff resided in the city of Terrell, Texas, and was connected with a hardware business there.  The contract provided, in substance, that the defendant company employed Raike, in the "capacity of a special agent" for one year, beginning January 15th, 1903, to introduce and sell a line of goods manufactured by defendant.  The territory in which plaintiff was to operate was stated to comprise the principal part of Texas and part of the Indian territory, with a privilege

127 App—31

to the company, if deemed expedient, to send him into other territory on trips, "for instance, through the Republic of Mexico, and other territory of the southwest." Plaintiff was accorded the privilege of carrying any "sidelines" of goods not in competition with defendant's, with the understanding that the profits from the sale of such sidelines should be exclusively his own. The company was to pay plaintiff a fixed salary of $1,200 a year, and in addition thereto an allowance of $1,200. It was provided that these sums were to be paid in installments of $200 on the first of each month, and, further, that when the sales of goods of the defendant company became so large that the profits offset the expenses of the agency, namely, $2400, the net profits in excess of said figure should be equally divided between the parties. It was further provided that if plaintiff desired to take a vacation of two weeks during the summer, he might do so without a suspension of salary and expenses. Plaintiff agreed to devote his time first, to pushing the sale of the defendant company's goods and not to carry any side line of goods that would conflict or naturally come in competition with that of defendant. At the time this contract was entered into, Watrous, who signed it as manager, in behalf of the defendant company, was an agent of the defendant in charge of its office or store in St. Louis, under the following contract:

"New York, October 1st, 1902.

"Memorandum of Agreement between the Manhattan Rubber Manufacturing Company, of 18 Vesey street, New York City, N. Y., and E. P. Watrous of Chicago, Illinois.

*Salary and Commission.*

"The Manhattan Rubber Manufacturing Company agree to employ E. P. Watrous as manager of their St. Louis store for a salary of $2,500 per year, payable in equal monthly installments, and a commission of two per cent on the gross sales of the St. Louis store, includ-

ing purchased goods. This two per cent commission to be payable monthly as soon after the end of each month as the sales can be made up.

### Territory.

"Territory to be as per the Chicago & Alton Railway Company's map enclosed, copy of which we have kept here. The line in Mississippi is drawn north, not including Vicksburg, Jackson and Meridian, which points are covered by Messrs. Whitney & Sloo Company, Ltd.

"E. P. Watrous in return for said salary and commission agrees to devote all his time and energies to the business of the Manhattan Rubber Manufacturing Company, and not to engage in any outside business without their full consent.

### Expiration.

"This agreement to expire October 1, 1904, and to continue in force thereafter until either party to this agreement gives to the other sixty (60) days notice in writing of their desire to terminate it.

"THE MANHATTAN RUBBER MANUFACTURING CO.,
"A. F. TOWNSEND, Vice-President."

It should be observed that the contract of employment which is the basis of plaintiff's suit, provided that his services should begin January 15, 1903. As soon as the general officers of the defendant company learned of this contract, they repudiated it as having been executed by Watrous without authority. The repudiation occurred January 7, 1903. E. M. Henderson, who was the treasurer of the company, had gone to St. Louis to examine and check up the business in charge of Watrous at that point, and while doing so found the agreement with plaintiff. Henderson at once wrote plaintiff under date of January 7, 1903, that Watrous had no authority to make the contract; that the Manhattan Rubber Company would in nowise recognize the contract; that plaintiff was not employed by said company and had no con-

nection with it, and that Watrous was no longer in the
employ of the company. Watrous was discharged from
the service of the company by Henderson on the latter's
visit to St. Louis. The defense is that the contract with
plaintiff was outside the scope of Watrous' authority as
manager of the St. Louis store. Plaintiff testified that
after the contract was executed and prior to January
15, 1903, when his work under it was to begin, he had
closed out his hardware business in Terrell, arranged for
samples of sidelines and prepared in every way, at a
considerable sacrifice, to carry out his agreement with
the defendant company. Further, that this happened
before he was notified the company had repudiated his
employment. Plaintiff travelled during the ensuing
year, selling goods for other houses under his authority
to handle sidelines of goods. He demanded samples from
the defendant and offered to carry out his contract with
it, but defendant did not furnish him samples or recog-
nize him as in its service. Each month, too, he drew on
the company for his salary and the additional sum of
$100 a month, which he claimed to be entitled to under
the contract; but those drafts were dishonored. After-
wards he instituted the present action to recover the
entire sum to be paid under the contract, to-wit: $2,400.
It is necessary to state the evidence relied on to show au-
thority, or the appearance of it, in Watrous to make
the contract. On this issue the contract, by which Wat-
rous was employed by the company as manager of the
St. Louis store, was put in evidence, and it was further
proved that the Indian Territory and Texas were includ-
ed in the territory of the St. Louis branch of defendant's
business. The so-called store in St. Louis was not a re-
tail establishment, but a general headquarters from
which was developed a trade for defendant throughout a
large area; Texas, Arkansas, Indian Territory,
Missouri, Southern Illinois, part of Indiana,
Western Kentucky and Northern Louisiana and

Mississippi. This territory was under the super-
vision and management of the St. Louis store of
which Watrous, at the time the contract in ques-
tion was made, was in charge. It was proved fur-
ther that Watrous had employed other salesmen who
traveled in said territory; that these employments were
made by Watrous without previous special authority
from the general officers of the company; that such con-
tracts were recognized as being within the sphere of
Watrous' duties, and that when a person applied at the
New York office for employment within Watrous' terri-
tory, one of the chief officers would refer the applicant
to Watrous. It further appeared that the company
had not repudiated any of the other contracts of employ-
ment by Watrous, but had recognized them and paid the
stipulated salaries. It did not appear that any of the
other employments were in writing, or, perhaps that
they contained the privilege of a vacation, or carrying
sidelines of goods, or some of the other terms of the one
in controversy. Besides this general testimony as to
the course of business between the company and Wat-
rous, and the scope of the latter's agency, a letter writ-
ten by the vice president, A. F. Townsend, to Watrous,
was put in evidence. It contained the following para-
graphs:

"We look to you for results, and as results mean as
much to you, if not more, than they do to us, we feel that
we are entirely safe to leave the 'ways and means' in
your hands.

"The sum total of all this letter amounts to this,
Watrous, that you are manager and in charge of our
store in St. Louis, and we propose to leave matters, in
your territory, entirely to you, making any suggestions
from time to time, that we may see fit, and we always
reserve the right, of course, to criticise any of your ac-
tions at any time."

That letter was shown to Raike by Watrous when

the former was hired, not for the purpose of demonstrating the authority of Watrous to make the contract, for that was not questioned, but simply, as Raike testified, to show the standing of Watrous with the company. No evidence was introduced by the defendant as to the scope of Watrous' authority, but defendant relies on the written contract between the company and Watrous to establish that he had no authority to enter into the contract in controversy. At the conclusion of the evidence for plaintiff, a demurrer was offered to it by defendant's counsel, which the court overruled and entered judgment for plaintiff for $1,166.54. From this judgment the present appeal was prosecuted.

It will be seen that the only question presented for decision is whether or not the evidence tended to prove Watrous had authority to make the contract in question in behalf of the company, or such an appearance of authority as justified Raike in entering into the contract, believing that it was within the scope of Watrous' agency. We agree with the learned counsel for the company that the contract between the company and Watrous did not, in terms, empower the latter to employ salesmen. In fact it did not prescribe the scope of Watrous' authority further than was done by appointing him manager of the St. Louis store with its allotted territory. This territory was described as being according to the Chicago & Alton Railroad Company's map. The map is not in the record, but there is positive testimony as to the extent of the territory embraced within the control of the St. Louis headquarters or store, and that Texas and the Indian Territory fell within such control. It is true the Republic of Mexico was not shown to be within it. But we lay no stress on that circumstance; because the proviso that the company might send Raike to Mexico on a trip or trips, is not of the substance of the contract employing the latter, but simply an independent covenant inserted for the benefit of the com-

pany. In the absence of an express statement in the contract between Watrous and the company, fixing the scope of the former's agency, the actual authority which he enjoyed must be found in subsequent arrangements expressly conferring authority on him and in the course of business which the company allowed him to pursue. We can see no possible reason to doubt that the employment of plaintiff was within his actual authority. The letter written by the vice-president of the company on November 5, 1902, though it related to a dispute between Watrous and another employee of the company by the name of Miller, shows the company entrusted the ways and means of conducting its business within the St. Louis territory so as to achieve success, to the choice of Watrous, reserving the right to criticise his actions. The letter said the company looked to him for results and that the officers felt safe in leaving ways and means in his hands. The letter further said its sum total amounted to this: that Watrous was the manager in charge of the St. Louis store and the company proposed to leave matters in his territory entirely to him, making suggestions from time to time as they deemed proper. The evidence shows without dispute that other salesmen were employed by Watrous to operate in his territory, and that the hiring of employees was so far in his hands that when an applicant for employment in the St. Louis territory would address the New York officials on the subject, in person or by letter, they would refer him to Watrous. The letter and this testimony show positively a direct authority in Watrous to hire plaintiff, or, at the very least, are evidence from which the court was justified in finding as a fact that he had authority to do so. [Brooks v. Jameson, 55 Mo. 505.]

The judgment is affirmed. All concur.