JAMES BRADFORD COMPANY, a corporation created by and existing under the laws of the State of Delaware, Plaintiff Below, Plaintiff in Error, *vs.* EDWARD HILL's SON & COMPANY, INC., a corporation created by and existing under the laws of the State of New York, Defendant Below, Defendant in Error.

1. PRINCIPAL AND AGENT—EVIDENCE HELD INSUFFICIENT TO SHOW AGENCY.

In action by one, as subagent to recover commissions, evidence *held* insufficient to warrant submission to the jury of issue as to whether agency existed

2. PRINCIPAL AND AGENT—HOW RELATION MAY ARISE.

An agency must arise either by the personal act of the principal, or by his express or implied assent to appointment by some one else.

3. PRINCIPAL AND AGENT—AGENCY MAY ARISE BY IMPLICATION FROM ACT DONE.

An agency or subagency may arise by implication from acts done by the assumed agent or subagent with the consent or acquiescence of the principal.

4. PRINCIPAL AND AGENT—WHEN PRINCIPAL IS BOUND BY APPOINTMENT OF SUBAGENT.

If business that agents had to do was of such character as to require the appointment of another person for its proper conduct and successful prosecution, and the principal could reasonably anticipate such action by his agent, and impliedly assented thereto, the agent had the right to make an appointment, and the person so appointed became the subagent of the principal, who is responsible for compensation, but an agent cannot bind his principal for compensation of subagent whose appointment the principal neither authorizes, approves, has knowledge of, nor can reasonably anticipate.

5. PRINCIPAL AND AGENT—LETTER OFFERED HELD PROPERLY REFUSED AS IMMATERIAL.

In action to recover commissions as subagent, where the issue was agency, court did not err in refusing to admit as immaterial a letter to the agent, where it no more than showed that plaintiff was agent of defendant's agent, a matter conceded by defendant.

6. PRINCIPAL AND AGENT—TESTIMONY HELD PROPERLY REFUSED AS IMMATERIAL.

In an action to recover commissions as subagent, where issue was agency, court did not err in refusing to admit, as immaterial, testimony of defendant's clerk and general manager that defendant's agent received commissions on sales embraced in plaintiff's bill of particulars; payment of commissions to the agent *not tending to show that* plaintiff was entitled to commissions as subagent.

(*January* 16, 1922)

WOLCOTT, Chancellor, PENNEWILL, C. J., Rice, HARRINGTON and RICHARDS, J. J., sitting.

*E. Ennalls Berl.* (of Ward, Gray and Neary), and *James H. Hughes, Jr.,* (of Marvel, Marvel, Layton and Hughes), for plaintiff in error.

*Reuben Satterthwaite, Jr.,* for defendant in error.

Supreme Court, June Term, 1921.

Error to the Superior Court for New Castle County, No. 41, September Term, 1917.

For report of case in the court below, *See supra, p.* 537.

### STATEMENT OF THE CASE

The defendant, Edward Hill's Son & Company, Inc., has its principal office in the City of New York, and its principal business is acting as sole selling agent for Michigan Alkali Company, a chemical manufacturer.

The plaintiff, James Bradford Company, has its principal office in the City of Wilmington and State of Delaware, and is a manufacturer of paints, dealer in window glass, painters' supplies, chemicals, etc.

Ellis Jackson & Company is a chemical broker with its principal office in the City of Philadelphia and State of Pennsylvania, and at various times acted as agent for Edward Hill's Son & Company, Inc., in the sale of caustic soda and soda ash.

On or about the year 1911, Ellis Jackson & Company entered into an agreement with James Bradford Company in relation to the sale of chemicals to the Du Pont Company in Wilmington, which were furnished by Michigan Alkali Company. In settlement for said chemicals the Du Pont Company paid James Bradford Company, and James Bradford Company, after deducting one per cent., would remit to Ellis Jackson & Company. During the latter part of the year 1916, the Du Pont Company communicated directly with Edward Hill's Son & Company, Inc., agent for Michigan Alkali Company, in relation to the purchase of chemicals manufactured by said Michigan Alkali Company; and as a result there-

of said Edward Hill's Son & Company, Inc., sold direct to the Du Pont Company during the latter part of the year 1916 and the year 1917 the chemicals set out in plaintiff's Bill of Particulars, and not through Ellis Jackson & Company. These are the sales for which commissions are claimed in this action.

The record also shows that the plaintiff company was employed by Jackson & Company, the agent of the defendant, to assist them in making sales to the Du Pont Company; that this connection continued up to the early part of 1917; that such sales were effected in the following manner; the plaintiff's Secretary and Treasurer, Mr. Francis, would learn from the Du Pont Company that it was in the market for a specified amount of chemicals; Francis would then advise Jackson & Company of the Du Pont Company's requirements, and they would furnish quotations to the plaintiff after receiving them from the defendant. Francis would then take up the matter again with the Du Pont Company's purchasing agent, and if the terms were satisfactory, a sale was effected. When a bargain had been struck in this manner, it was concluded by the execution of a duplicate set of contracts between James Bradford Company and the Du Pont Company, and James Bradford & Company and Jackson & Company, one of the contracts reciting that James Bradford & Company represented the Michigan Alkali Company and the other that Ellis Jackson & Company represented Hill's Son & Company. Francis testified that he collaborated several times with Mr. Taylor, the managing partner of the defendant, in placing such orders with the Du Pont Company, but recalled only one case, and that was where the Du Pont Company required a certain quantity of caustic soda, after the contract of 1915 had been placed—it was an additional amount of two thousand tons— and Mr. Taylor and Mr. Jackson came over to Wilmington and started to get the order and failed to secure it, and he, Francis, afterwards saw the purchasing agent of the Du Pont Company and "We finally agreed on a price." Mr. Jackson and Mr. Taylor communicated to Francis their failure to get the order:

"I think they waited for me while I went in to see the purchasing agent of the Du Pont Company, and I then came out and saw Mr. Jackson and Mr. Taylor and told them what I had done, and it ended in their coming back to the office of the purchasing agent, Mr. Melson, and they made the contract. The three of us participated in the securing of this particular order."

Francis testified on cross examination that he never had any information from the defendant about this or any other contract, only through Ellis Jackson & Company, and also, that for the contract he made in collaboration with Mr. Taylor and Mr. Jackson, he received commission from Ellis Jackson & Company, as he had in other cases.

Francis further testified that the plaintiff did nothing towards selling soda ash and caustic soda to the Du Pont Company for its 1917 requirements, on which commissions are claimed; and as to its 1916 requirements, on which commissions are also claimed, the plaintiff got information from the purchasing department of the Du Pont Company that the Company was in the market for soda ash, a different chemical from what the plaintiff had previously sold them, and submitted the matter to Ellis Jackson & Co., but got no prices; that Edward Hill's Son & Company and Jackson & Co. may have had the same information from the Du Pont Co.; that they immediately took action; that he gave them the further information; that during the negotiations another company came to the Du Pont Company and made a proposition for a lower price than Edward Hill's Son & Company; that the business was secured by Edward Hill's Son & Company; that they made a direct contract with the Du Pont Company. This was all the plaintiff did in that transaction. The sales to the Du Pont Company, on which the plaintiff claims commission, were made by the defendant direct, and were for the Du Pont Company's requirements for 1916 and 1917.

At the conclusion of plaintiff's evidence at the trial, the defendant moved for a non suit, and the Court below granted the motion, but the plaintiff declined to take a non suit, and the jury was directed by the Court to return a verdict for the defendant.

Because of the fact that the Court below directed a verdict for the defendant, for the reason that the evidence adduced by the

plaintiff did not warrant the submission of the case to the jury, we have thought it necessary to set out at some length such parts of the evidence as are deemed material.

The Assignments of Error are substantially as follows:

1.    That the Court refused to admit in evidence a letter from Ellis Jackson & Company to the James Bradford Company showing that a condition of agency existed between the parties, and that Ellis Jackson & Company, in Philadelphia, expressly recognized it in that letter. It was offered to show that Ellis Jackson & Company treated the James Bradford Company as its agent, and not as a purchaser.

2.    The Court refused to admit the testimony of the Chief Clerk for Ellis Jackson & Company and of the General Manager of Edward Hill's Son & Company, Inc., going to show the payment or non-payment of commissions on the sales in controversy by Edward Hill's Son & Company, Inc., to Ellis Jackson & Company.

3.    The Court below erred in rendering a decision as follows:

"In this case, there is not sufficient evidence to warrant the jury in finding any contract, express or implied, existing between the plaintiff and the defendant, whereby the plaintiff would be entitled to recover a verdict in this case."

4.    The Court below erred in granting a motion for a nonsuit.

5.    That the Court below erred in directing the jury to bring a verdict for the defendant.

PENNEWILL, C. J., after making the above statement of the case, delivering the opinion of the Court:

The important question in the case is this:

Was the plaintiff, at the time the sales were made on which he is seeking to recover commissions, a subagent of the defendant? It is not claimed that there was any express agreement between the plaintiff and defendant that the former should at any time act as agent for the latter, but it is claimed that the relations between the plaintiff and defendant's agents, Jackson & Co., the course and

nature of the business in which they were engaged, and the facts and circumstances connected therewith, show that the plaintiff was such subagent.

It does appear from the evidence, that prior to the sales on which the plaintiff is claiming commissions, which were made by the defendant to the Du Pont Co. direct, the plaintiff rendered services for defendant's agents, Jackson & Co., that were beneficial to the defendant. But there is nothing to show that the defendant had any knowledge of such services, or knew that the plaintiff was assisting in making sales for their agent, except that on one occasion a representative of the defendant, and their agent Jackson, went to Wilmington and attempted to make a sale to the Du Pont Co. At the time they called on the plaintiff's Secretary who effected the sale after they had failed. It is true the Secretary testified that he had collaborated with Mr. Taylor, the managing partner of the defendant, on several occasions in making contracts with the Du Pont Co., but he could recall only the one we have mentioned, and our conclusion is that that is the only evidence that tends to show that the defendant had any knowledge that the plaintiff was assisting in effecting sales in which they were interested.

Aside from that one circumstance the claim of the plaintiff that he was a subagent of the defendant is based entirely on assumptions or inferences which he thinks the Court are justified in making or drawing from the relations between the plaintiff and Jackson & Co., and the nature of the business in which they were engaged.

In the contracts the plaintiff made with Jackson & Co., the defendant's agents, such agents were described as representing the defendant, and in the contracts made with the Du Pont Co. the plaintiff described himself as representing the Michigan Alakli Company for which the defendants were sole agents. The inference the plaintiff seeks to draw from such language, is that the defendant must have seen the contracts made with their agent and therefore, had knowledge that he was acting for them and they acquiesced therein. The inference sought to be drawn from

the wording of the other contracts is that inasmuch as he represented the Michigan Alkali Company for which the defendant was sole agent, he represented the defendant.

In respect to such contentions it may be said they are more in the nature of assumption than legitimate inference from the evidence. It does not appear that such contracts, or any of them, were ever seen by the defendant. And even if they were, the defendant might reasonably have thought that the plaintiff was employed by, and acting solely, for Jackson & Co., their agents.

[1] We think there is no evidence which shows that the defendant knew that the plaintiff was acting for them, because the one case in which a representative of the defendant was present when the plaintiff assisted in making a sale is not sufficient to impute knowledge to the defendant that the plaintiff was acting for them. He was acting for their agent, Jackson & Co., but it does not follow that he was acting as defendant's agent.

[2] The plaintiff concedes that under the general rule of law an agency must arise either by the personal act of the principal or by his express or implied assent to the appointment of an agent by someone else, but he contends—

"That notwithstanding the general rule there are many cases wherein, from the very nature of the duty, or the circumstances under which it is performed, the employment of subagents is imperatively necessary, and the principal's interests will suffer if they are not so employed. In such cases, although the general rule might otherwise apply, an exception is suggested, based upon the presumed assent of the principal, and therefore if he has not manifested a contrary intent, the employment of the necessary subagents will be implied. The authority of the agent is always construed to include the necessary and usual means to execute it properly." *Mechem on Agency*, § 316.

And so the plaintiff, relying on this exception to the general rule, claims that even though the defendants had no knowledge of the services the plaintiff rendered for them through their agents said agents had nevertheless the right, on account of the nature of defendant's business, to employ, and did employ, the plaintiff, as a subagent of the defendants.

There is no real controversy between counsel respecting the law applicable to the question of agency except in regard to the employment by an admitted agent of a subagent for the principal.

It is unnecessary, therefore, to even refer to the authorities cited by either side on any other question.

[3]    There is no doubt that the appointment of an agent may in some cases be inferred from the circumstances and conduct of the parties, and the fact of agency may be established either by direct or indirect evidence.  It may be implied or inferred, or indirectly shown, by evidence of the relative situation of the parties, the nature of the business which is the subject of controversy, and the character of the intercouse between them, provided the facts and circumstances disclosed by the evidence fairly justify such an inference.  Evidence of agency is often found in the fact that the alleged principal has acquiesced in, recognized, or adopted similar acts done on other occasions by the assumed agent.  Where the acts so adopted are so closely connected as to constitute a course of dealing or to establish a custom, there can usually be but little difficulty.  An agency may arise by implication from acts done by the assumed agent with the consent or acquiescence of the principal.  *Geylin v. DeVilleroi*, 2 *Houst.* 311; *Mechem on Agency*, §§ 211, 262, 263, 271; *Gambrill v. Brown Hotel Co.*, 11 *Colo. App.* 529, 54 *Pac.* 1025.

As already said, counsel do not seriously disagree about the law of agency; the real dispute is as to the application of admitted law to the facts of this case.  The general principles referred to are based on the assumption that the principal knew, or should have known that the assumed agent was acting for him, and that he acquiesced in, recognized or adopted such acts, or similar acts done on other occasions by the assumed agent.  There is nothing in the evidence which shows that the defendant knew that the plaintiff was acting as subagent for him at any time, or that he acquiesced in, recognized or adopted similar acts done on other occasions by the plaintiff, with the single exception, above referred to, of the sale effected by the plaintiff when a representative of the defendant was in Wilmington with their agent Jackson.  This one transaction was not enough to show a course of business or dealing between the parties from which an agency could be reasonably inferred;  and besides, the defendant's representative

may have reasonably thought the plaintiff was employed by Jackson & Co. to make that particular sale.

The Court are clear that there was no relation of principal and subagent between the plaintiff and defendant at any time unless the defendant's agents, Jackson & Co., were authorized to appoint a subagent to assist them in the transaction of defendant's business.

[4] It is not claimed that Jackson & Co. were expressly authorized by the defendant to employ a subagent. Were they impliedly authorized to do so? Such authority may be inferred from the acquiescence of the principal or the nature of the business. If the business the agents have to do is of such character as to require the appointment of another person for its proper conduct and successful prosecution, and the principal could reasonably anticipate such action by his agent, and impliedly assented thereto, the agent has the right to make such appointment, and the person so appointed becomes the subagent of the principal who is responsible for his reasonable compensation. Such we think is the law, and a familiar example is the employment of an attorney to prosecute a claim which the agent is directed to collect.

In many real estate transactions, where the agent is unable to properly conduct the business entrusted to him without assistance he has been permitted to employ a subagent. Other instances or cases might be mentioned, but they are all predicated on the nature of the business, and the need of assistance, the principal's reasonable anticipation of its requirements, and his implied assent thereto. It would be dangerous, and without legal justification, we think, to hold that an agent can bind his principal for the compensation of a subagent whose appointment the principal neither authorized, approved, had knowledge of, or could reasonably anticipate. The general rule is, that an agent cannot appoint a subagent without the consent of his principal. To that rule there are, as we have said, some exceptions, but we do not think the present case falls within any of them.

Ellis Jackson & Co. were the agents of the defendant in the selling of chemicals. Their place of business was in Philadelphia,

only a short distance from Wilmington, the home of the Du Pont Co., and they were in easy telephone, telegraph and mail communication with the last named company, who were in the market from time to time for large quantities of the chemicals that Jackson & Co. were employed to sell. There was nothing complicated or burdensome about the business, nor anything, apparently, that Jackson & Co. could not do themselves. It does not appear from the evidence that Jackson & Co. solicited the services of the plaintiff. True, they accepted them, but the fair inference is that they were tendered by the plaintiffs whenever they learned of the requirements of the Du Pont Co. There is nothing to indicate that such services were needed for the proper conduct of defendant's business, or that the assistance of a subagent was at all necessary. The plaintiff dealt directly with Jackson & Co. in every transaction he had with the Du Pont Co., looked to Jackson & Co. for payment of commissions, and was paid by them in every case until the defendant made the sales in question direct, without the services even of Jackson & Co. It clearly appears from the evidence that the plaintiff never had any communication with the defendant, or received any information from the defendant about any contract, except through Jackson & Co. Jackson & Co., the defendant's agents, employed the plaintiff to act in the capacity of broker for them in effecting other sales to the Du Pont Co. before the sales in question were made, and had a perfect right to do so, but they were not, in our opinion, authorized to employ the plaintiff as subagent for the defendant.

We think it unnecessary to review or comment at any length on the cases cited by the plaintiff to sustain his contention that Ellis Jackson & Co. were authorized from the nature of their business to employ the plaintiffs as subagent of the defendant. We think they are not in point. One of such cases involved the employment of an attorney to institute legal proceedings, and some of them involved large real estate transactions. These are well recognized exceptions to the general rule. In one case (*Dewing et al. v. Hutton*, 48 *W. Va.* 576, 37 *S. E.* 670), the plaintiffs by their many acts of acceptance, ratified what their general agent had done.

The agent was authorized to purchase large tracts of timber land. In another case (*Budd v. Howard Thomas Co.* 40 *Misc. Rep.* 52, 81 *N. Y. Supp.* 152), the Court held that the defendant had accepted the plaintiff as agent by advancing money to him from time to time with which to pay for the several carloads of fruit he bought. In another case it was held that a division engineer of a railway company might have authority to bind the company in contracts of employment for work and labor.

In the case of *Raike v. Manhattan Rubber Co.*, 127 *Mo. App.* 480, 105 *S. W.* 1100, the agent had charge of a district covering a large territory and had large powers in respect to carrying on the business entrusted to him.

In some of the cases the agency could be inferred from the conduct of the parties to the original contract of agency, and in others the question of agency was not distinctly involved. It is hardly necessary to note the difference between the cases relied on by the plaintiff and the case at bar, in which there was no continuing agency, where the nature of the business did not necessarily require the employment of a subagent, and assent or ratification by the defendants could not be reasonably inferred. The plaintiff was employed by Jackson & Co. to act as broker for them whenever he found that he could make a sale to the Du Pont Company, and in each case Jackson & Co. quoted him prices, and for his services paid him commissions. He was never otherwise paid, and never received other compensation. Obviously this is a very different case from any cited by the plaintiff.

It is no doubt true, as stated by Mechem in his work on Agency, *section* 296, that though the facts may be undisputed, there may fairly be difference of opinion as to the inferences, and in such cases it is for the jury to determine, under proper instructions from the Court, whether agency exists. But it is equally true, as stated in the same work at *section* 295—

"Where the facts are undisputed and only one inference can be drawn from them, the Court must determine whether they create an agency, * * * and this is equally true whether it is sought to establish the agency by previous authorization or by subsequent ratification."

The Court are clearly of the opinion that it is not shown by the evidence, or by any reasonable inferences that can be drawn therefrom, that the plaintiff was the subagent of the defendant at the time of the sales covered by plaintiff's bill of particulars, on which he is seeking in this action to recover commissions, and which were made by the defendant directly to the Du Pont Company.

In reaching our conclusion on the question of agency, we have not been unmindful of the fact that in the present case, where binding instructions were given for the defendant, the question is, not whether the alleged agency was proved, but whether there was any evidence which would reasonably support a verdict for the plaintiff and upon which the jury would have been justified in finding such verdict. We are of the opinion there was no such evidence, and that if a verdict for the plaintiff had been rendered thereon, the Court would have been compelled to set it aside.

We think there was no error in the refusal of the lower court to admit the testimony covered by appellant's assignments of error.

[5]    The first assignment says, the Court erred in refusing to admit as evidence a letter dated January 23, 1915, from Ellis Jackson & Company to the James Bradford Company. It was offered to show that Ellis Jackson & Company treated the James Bradford Company as their agent and not as a purchaser. The Court properly regarded the letter as immaterial, and for that reason refused to admit it. Counsel for the defendants conceded that the plaintiff was agent for Ellis Jackson & Company, and that was all the letter was designed to show or could show. It had no bearing on the real issue in the case, viz., whether the plaintiff was agent for Edward Hill's Son & Company, the defendants.

[6]    The second assignment says, the Court erred in refusing to admit as evidence the testimony of a clerk for Ellis Jackson Co. and of the general manager of the defendants, that Ellis Jackson & Co. received from the defendants commissions on the sales embraced in appellant's bill of particulars. The testimony was also regarded by the Court as immaterial, and properly so, because

payment of commissions to Ellis Jackson & Co. could not tend to show that the plaintiff was entitled to commissions from the defendant.

The court are of the opinion that there is no error in the proceedings of the Court below, and its judgment will therefore be affirmed.