**EASTERN MEMORIAL CONSULTANTS, INC., a Delaware Corporation, Defendant below, Appellant,**

v.

**GRACELAWN MEMORIAL PARK, INC., a Delaware Corporation, Defendant and Cross-Claimant below, Appellee.**

**William RICHARDS et al., Plaintiffs below, Appellants,**

v.

**GRACELAWN MEMORIAL PARK, INC., and Eastern Memorial Consultants, Inc., both Delaware Corporations, Defendants below, Appellees.**

Supreme Court of Delaware.

Submitted Feb. 13, 1976.

Decided Aug. 10, 1976.

Richard L. Sutton and Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Eastern Memorial Consultants, Inc., defendant below.

Jack B. Jacobs and Richard A. Zappa, of Young, Conaway, Stargatt & Taylor, Wilmington, for Gracelawn Memorial Park, Inc., defendant below.

Rodman Ward, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for individual plaintiffs below.

Before HERRMANN, Chief Justice, and DUFFY and McNEILLY, Justices.

McNEILLY, Justice:

In this action by plaintiffs to recover portions of their sales commissions which, they complain, were wrongfully withheld by Gracelawn Memorial Park, Inc. and/or Eastern Memorial Consultants, Inc., plaintiffs appeal from the Superior Court's order granting Gracelawn's motion for summary judgment.

Eastern appeals the order of summary judgment for Gracelawn on its cross-claim against Eastern to recover, pursuant to the sales agency contract between them, expenses incurred in defending plaintiffs' suit. Both appellants argue that summary judgment was erroneously granted because the record reflects various disputes of material fact. *Vanaman v. Milford Memorial Hospital, Inc.*, Del.Supr., 272 A.2d 718 (1970).

I

Gracelawn owns and operates a cemetery near Wilmington. Prior to May 1, 1967, Gracelawn employed Robert Nuckolls as its sales manager for "pre-need" sales, i. e., cemetery lots, mausoleums, and other burial accessories; and in this capacity, Nuckolls hired and supervised the activities of Gracelawn's sales force.

Sometime in 1967, Nuckolls formed Eastern and became its president and sole shareholder. On May 1, 1967, Gracelawn and Eastern entered into a contract (the Agreement) whereby Eastern became "exclusive Pre-Need Sales Agent . . . for the pre-need sale of burial lots, mausoleum crypts and niches owned by Gracelawn, and memorials for installation on lots in Gracelawn." The Agreement was automatically renewable every year at the option of Eastern, subject to certain conditions not here applicable. It provided that Gracelawn would pay a monthly sales commission to Eastern, based on a fixed percentage of the "selling price", the price charged to the customer less 20% to be deposited in the perpetual care trust fund it maintained as required by law. 12 Del.C. § 3554(a). Gracelawn further retained 15% of the commission payable in a reserve against cancellations which would

periodically be returned to Eastern in the amount of its credit balance therein. In the event of cancellation by a customer, Gracelawn would retain the first $20. paid, and any remainder would be credited towards the cancellation reserve. The Agreement also provided that Gracelawn would set all prices, supply necessary forms, and provide Eastern with office space on its premises. It was further agreed that Eastern, at its own expense and without expense to Gracelawn, would employ and have sole supervision over an adequate sales force, and save Gracelawn harmless from compensation claims brought against it by any person Eastern so employed.

Shortly after the contract was executed, Nuckolls met with the sales staff and informed them that he had formed Eastern which was taking over sales operations for Gracelawn, but that so far as the sales personnel were concerned, "everything would be the same" and they "would notice no change"; in fact, they were specifically instructed to continue to represent Gracelawn in public and not to mention Eastern.[1]

At all times thereafter, through 1970, Eastern generally supervised and controlled the day-to-day activities of its sales personnel who continued publicly to represent Gracelawn. Salespersons, including plaintiffs, were always paid by Eastern and never received any compensation from Gracelawn, although the exact manner and terms by which Eastern paid the salespersons is not altogether clear. It does appear, however, that Eastern maintained a reserve account against cancellation holding back 20% of the commissions due.[2] Nuckolls stated that while periodically

these reserves would be released to some employees, Eastern had no set practice or agreement with respect thereto, and thus decided to establish a policy whereby it would release an employee's reserve 32 months after he had terminated his employment with Eastern. Upon announcement of this policy in December, 1970, plaintiffs, unaware that any of their commissions were retained, and/or being dissatisfied with the proposed policy itself, approached Gracelawn's president, Robert Hagenbach, who in turn informed them that Gracelawn was not their employer and that if there was a problem with compensation, to see their employer, Eastern. Thereupon, plaintiffs commenced this action on January 31, 1971.

Meanwhile, the relationship between Gracelawn and Eastern had grown increasingly strained, and in April, 1970, Gracelawn began suit against Eastern in the Court of Chancery, seeking reformation of the Agreement and a declaratory judgment of breach.[3] In February, 1971, Gracelawn filed the present crossclaim against Eastern, and on April 30, 1971, Gracelawn rejected Eastern's election to renew the Agreement and terminated the agency.

## II

In their complaint, plaintiffs allege that Gracelawn withheld portions of their sales commissions for a reserve account without their consent, and deducted from their commissions "a fee for bookkeeping, such fee not being in the original contemplation of the parties, and totally improper as a deduction from wages earned." It is at once clear, however, that what plaintiffs

1. At this time, the sales staff included plaintiffs, Ruth Brice, Joseph Ciociola and Royden Piper. Plaintiffs, John Barett, James Farris, Raymond Hales and William Richards, were hired by Nuckolls or one of his managers at various times subsequent to Eastern's taking over sales operations. Each plaintiff stated on deposition that he or she believed, at all times relevant, that he or she was hired by and working for Gracelawn.

2. It is not clear whether this reserve account was in addition to, or simply reflected, for bookkeeping purposes, the reserve account maintained by Gracelawn for Eastern.

3. See *Gracelawn Memorial Park, Inc. v. Eastern Memorial Consultants, Inc.*, Del.Ch., 280 A.2d 745 (1971), aff'd 291 A.2d 276 (1972). This action remains untried at the present time.

seek to recover from Gracelawn are monies that it rightfully withheld *from Eastern* pursuant to their Agreement—and the record is devoid of any evidence that would indicate or even suggest that Gracelawn has withheld anything beyond those amounts to which it was contractually entitled.

■ Nevertheless, plaintiffs contend that there is evidence which would establish Gracelawn's liability for their compensation withheld: (1) because Gracelawn is their employer; (2) because they justifiably relied upon representations by Gracelawn's agent, Nuckolls, made with *apparent* authority to do so, to the effect that Gracelawn was their employer and would pay or guarantee their sales commissions; and (3) under the principles of quasi-contract, and promissory and equitable estoppel. We find, however, that the evidence does not support any of the theories advanced.[4]

■ The record inescapably demonstrates that plaintiffs were exclusively Eastern's employees and that Gracelawn was not their employer in any legal sense of the word. Gracelawn's alleged admission that plaintiffs were its "subagents" does not affect these relationships because, quite simply, a principal is not the "employer" of subagents hired by his own agent, except insofar as he might become so by express promise ·or estoppel. Restatement Agency 2d § 458, comment (a).[5] Clearly no such express promise exists; in fact, the Agreement specified the contrary, that plaintiffs were to be employed and supervised solely by Eastern at its own expense.

■ Likewise the evidence does not support plaintiffs' attempts to predicate liability on theories of apparent authority, prom-

issory and equitable estoppel, and quasi-contract. While certain factual disputes might exist, for instance, as to plaintiffs' beliefs and justification for those beliefs, the record reveals no representations, promises, knowledge, or other conduct or neglect *by Gracelawn* which could be said to manifest its intent to pay these plaintiffs or which might otherwise preclude it from denying liability; nor is there any evidence that Gracelawn anticipated or should have anticipated that plaintiffs might someday look to Gracelawn for their compensation. Because of these evidentiary deficiencies, the Court below was correct in ruling that Gracelawn did not become contractually or otherwise obligated to pay plaintiffs' commission, and accordingly, summary judgment was properly granted.

Eastern, relying on the principle that a party cannot enforce a contract when he himself is in breach thereof, argues that summary judgment was improperly granted because resolution of the question of its contractual obligation to indemnify Gracelawn necessarily depends upon an unresolved threshold factual determination whether or not Gracelawn's termination of the agency constituted a material breach of contract. Eastern further argues that, in any event, Gracelawn may not recover attorneys' fees because the Agreement does not specifically provide therefor.

Turning first to the latter contention, the Agreement provides, in pertinent part:

(4) "Eastern shall, at its own expense and without cost or expense to Gracelawn . . . employ, organize and have the sole supervision and direction of an adequate sales force . . . Eastern shall at all times indemnify and save Gracelawn harmless from any claim for wages,

---

4. Plaintiffs have also argued ;that Gracelawn's liability arises under 19 Del.C. § 1105, Prime Contractor's Responsibility for Wage Payments; however, that statute has no applicability to the present facts.

5. Cases cited by plaintiffs, *James Bradford Co. v. Edward Hill's Son & Co.*, Del.Supr., 1 W.W.Harr. 546, 116 A. 353 (1922), and *Freeport Ridge Estates v. Reckner*, Fla.Supr., 266 So.2d 129 (1972), are distinguishable on their facts.

salary, commissions, compensation . . . by . . . any person so employed by it as part of its sales organization."

▇▇ Where, as here, the claim for attorneys' fees is grounded on a contract of indemnity, recovery is generally permitted even though the contract does not expressly mention attorneys' fees. 22 Am.Jur.2d *Damages* § 166. As stated by the Court in *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, Or.Supr., 475 P.2d 69 (1970):

"The rule in most jurisdictions, regardless of whether indemnity is based upon an implied or an express agreement, is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held not liable." [Citations omitted]." 475 P.2d at 71.

We believe this rule is logically correct, both generally and as applied here, since the indemnitee, in choosing to dispute and defend against the subject claim, does so ultimately for the benefit of the indemnitor who would otherwise be responsible for the liability suffered by or adjudged against his indemnitee.

We disagree with Eastern's contention that its contractual obligation is limited to indemnity for only those amounts of Eastern's employees' compensation for which Gracelawn is adjudged liable. Although unartfully drafted, the agreement does expressly provide that the plaintiffs, as Eastern's employees, were employed by Eastern at its own expense *and without expense to Gracelawn.* Consequently, as between the two corporations, unquestionably it was Eastern's and not Gracelawn's, obligation to pay any and all of its employees' compensation. Cf. *Mullins v. Henderson*, 25 Cal.App.2d 117, 170 P.2d 118 (1946); *Jenkins Trucking Inc. v. Emmons*, Fla.App., 212 So.2d 55, 56 (1968); *City of Youngstown v. First National Bank*, Ohio Supr.,

106 Ohio St. 563, 140 N.E. 176 (1922). Thus, the limitations Eastern would impose upon its contractual obligations to Gracelawn in the event compensation claims were made against it, would render those obligations wholly illusory because, in essence, they would require Eastern only to save Gracelawn harmless from a liability which, by the very terms of the contract, could not in fact arise.

Accordingly, since plaintiffs' claim against Gracelawn is one for which it is entitled to indemnity, we conclude that Eastern is obligated to reimburse Gracelawn for its reasonable legal expenses, including attorney's fees, incurred as a result of defending the claims as to which indemnity was promised.

▇▇ Turning to Eastern's breach-of-contract argument, this contention would ignore the factual context of the alleged breach.

At the time the claim and cross-claim were filed, there existed a valid and enforceable contract obligating Eastern to save Gracelawn harmless from the very claim asserted here by plaintiffs, which obligation, as we have already determined, including bearing the legal expenses Gracelawn incurred. Eastern has offered nothing which would compel a different conclusion. Even if the subsequent termination of the agency did constitute a material breach of contract (which Eastern admittedly did not assert until over three years later, and after Gracelawn was obliged to defend this action because Eastern had denied all liability under the indemnity agreement), that "breach" occurred several months *after* this claim and cross-claim were filed, and thus it is not relevant because the applicable rights and duties had become fixed before the agency was terminated.

Under these circumstances, we conclude that there was no error in granting summary judgment in favor of Gracelawn against Eastern.

Affirmed.