[Civ. Nos. 4775, 5279.   Fourth Dist.   Oct. 26, 1956.]

EMMA M. STEEVE, Respondent, v. LILLIAN E. YAEGER, Appellant.

(Two Cases.)

A. P. G. Steffes, and Harvey, Rimel & Johnston for Appellant.

Snyder, Fletcher & O'Neil and Forgy, Reinhaus & Forgy for Respondent.

BARNARD, P. J.—This is an appeal from judgments granting declaratory relief and ordering and approving an accounting.

The plaintiff was a nurse and the defendant was a real estate broker. They were friends and lived together for some years. In 1939, they entered into a written partnership agreement as equal partners. The partnership acquired two parcels of valuable income real property in Fullerton, referred to as "Parcels One and Two," the legal title being held for them by a third party. So far as material here, it also acquired five other parcels of real property, title to four of them being in plaintiff's name and title to one being in defendant's name. On August 10, 1944, the defendant took the plaintiff to the office of defendant's attorney where a contract and deeds terminating the partnership and conveying the property had already been prepared. The plaintiff was surprised and hurt because the defendant was dissolving the partnership without taking it up with her beforehand, but after certain arguments and representations were made she signed the papers.

This contract described the property owned by the partnership, and provided that the partnership agreement should no longer apply and that the parties desired and agreed thereby to partition and divide said properties as set forth therein. It was then agreed that:

Parcels One and Two "shall be conveyed in fee to (the defendant) but reserving a life estate in and to one half of the rents, issues and profits to (the plaintiff) for and during the period of her natural life";

That the four parcels standing in the name of the plaintiff shall be conveyed in fee to the defendant but reserving a life estate to the plaintiff, in the same language just above quoted;

That with respect to the parcel standing in defendant's name, "there shall be conveyed to (the plaintiff) a life estate consisting of one half of the rents, issues and profits, for and during the period of her natural life, and the fee title, subject to said life estate, shall remain in (the defendant)";

That the parties agree to dispose of all the property except Parcels One and Two, and apply the proceeds upon "the present indebtedness on Parcels One and Two, to the end that said properties may be freed from indebtedness and improved, so as to obtain the maximum rental income for the benefit of the parties hereto";

That each party shall be entitled to $100 a month from the properties to be charged against the net income to which each party may be entitled;

That the rental of a house in the rear of Parcel Two shall be $50 per month and shall be paid by the one occupying the same from and after September 1, 1944;

That if one half of the net income from the properties should be insufficient to care for either of the parties, by reason of illness, then as much of the principal or corpus of the properties as necessary shall be used for that purpose;

That except for necessary operating expenses no indebtedness shall be contracted without the concurrence of both parties; and that each party will sign any papers necessary to renew the existing indebtedness when it became due;

That true books of account should be kept, and on December 31 of each year the books should be audited and closed and an accurate statement delivered to each party, with both parties entitled to withdraw the balance of her share of the net profits, if any.

The deeds were recorded, in accordance with the contract, and the defendant continued to collect the rents and pay the bills as she had done during the previous years. The plaintiff went to Los Angeles to work and the defendant continued to live in the house referred to in the agreement. The defendant paid the plaintiff $100 a month for a time. During a period when the plaintiff was in a hospital with a nervous breakdown, the defendant also paid bills for her amounting to about $1,100, there being then no net income available for that purpose. The plaintiff married in 1947, and the defendant stopped paying $100 a month to the plaintiff on January 1, 1948. It was stipulated that since that date defendant has taken out $200 a month, or $2,400 a year, charging it as a manager's salary. The defendant had an opportunity to sell one of the parcels other than Parcel One and Two for $20,000, which was $5,000 more than it cost, but refused to do so. This was a citrus orchard which was operated at a loss through these years. In July, 1949, the defendant asked the plaintiff to execute a note and trust deed for $35,000, which she declined to do. She consulted attorneys, and this suit was filed on August 4, 1949.

The complaint, as amended, set up separate causes of action for rescission of the agreement, for reformation, for declaratory relief, and for quiet title. The answer of the defendant also asked for declaratory relief and, as special defenses, pleaded the statute of limitation and laches. At the trial, it was stipulated that certain issues be tried first and practically all of the evidence, except that of the actual accounting,

was then received. After oral argument a minute order was entered reciting that the court finds certain things. Some time later the court's findings of fact and conclusions of law were filed.

The court found, among other things, that when the agreement and deeds were executed on August 10, 1944, the plaintiff was not represented by counsel, legal or otherwise; that they were read to her by defendant's counsel; that at that time the plaintiff was ill, nervous, upset and confused, and did not understand the meaning and effect of the legal language used; that she signed the contract believing the representations then made to her; that both parties then believed that her interest in the property was thus converted into that of a life tenant as to an undivided one half interest in the property; that the defendant has at all times managed and controlled the property, collecting the rents and paying the taxes and expense; that in January, 1949, the plaintiff for the first time sought legal counsel pertaining to her rights under said agreement, and for the first time questioned the representation made to her by the defendant that she had been overpaid; that in July, 1949, the plaintiff notified defendant that she was rescinding said agreement; that the plaintiff executed the agreement of August 10, 1944, relying on the representation then made to her that the defendant would sell said property, except Parcels One and Two, and would apply the proceeds to discharge the encumbrances on Parcels One and Two, so that each of them would have an unencumbered one half of the income from Parcels One and Two for the remainder of her life; that numerous controversies exist between the parties as to their respective rights under the agreement and deeds; that the defendant had only partially accounted to the plaintiff as to the income from these properties and the expenses in connection therewith; that it is not true that the defendant provided plaintiff with annual accounts involving these properties; that on March 3, 1949, the plaintiff demanded of defendant a detailed accounting; that the plaintiff is vested with a life estate in and to an undivided one half interest. in said property for and during her life; that the defendant owns all of the remainder subject to said life estate; that a confidential relationship existed between these parties from 1928 to and including January, 1949; that none of plaintiff's causes of action are barred by the statute of limitations, and plaintiff has not been guilty of laches; that the defendant

has not paid to plaintiff her full share of the income from said property; that defendant has not sold all of the property agreed to be sold for the purpose of paying off the encumbrances on Parcels One and Two; that the defendant has performed services and devoted time in the management of these properties; that plaintiff did not discover that the orange orchard was not sold until in July, 1949, when the defendant requested her to sign a note and trust deed for $35,000; that plaintiff then demanded that the defendant sell the orange orchard, pursuant to the agreement, and use the proceeds toward the discharge of encumbrances on the properties; that defendant refused and still refuses to sell that property for that purpose; and that defendant has failed and refused to pay the plaintiff any sum whatever from the income of said property since April, 1948, although demand has been made therefor.

As conclusions of law the court found, among other things, that a declaratory judgment was necessary, and that an accounting was necessary. An interlocutory judgment was entered granting the plaintiff declaratory relief and construing the terms of the 1944 agreement; ordering an accounting and appointing a certified public accountant as referee to make an accounting and report; ordering that a final judgment be entered upon the approval of the report of the referee; and reserving jurisdiction over the issues tendered for final determination in the final decree. The defendant made a motion for a new trial which was denied and she then appealed from the interlocutory judgment.

The referee filed a report and after the matter was again argued the court made supplemental findings of fact and conclusions of law, approving the report and account of the referee, and finding in accordance therewith that the defendant had collected during the period in question as rents and income from the property the total sum of $167,998.18; that she had expended $101,926.50 for maintenance of the property, leaving a net income of $66,071.68, of which the plaintiff was entitled to one half or $33,035.84; and that the defendant had paid the plaintiff only $5,942.39, leaving a balance of $27,093.45 owing to her. It was also found that when the sum of $1,136.48 was paid for necessary medical care for the plaintiff no net income was available for that purpose, and that under the contract that amount was not chargeable against plaintiff's share of the net income. The court also adopted its previous findings and, as supplemental

conclusions of law, found that of the amount due the plaintiff she was entitled to a personal judgment for $9,852.69; and as to the remaining $17,240.76 she was entitled to a judgment *in rem* with a lien on the property, since that amount of the rents had been used to reduce existing liens; and that if this amount was not paid within a reasonable time the plaintiff might foreclose this lien, the orange orchard to be first sold and the proceeds applied thereon. A final judgment was entered in accordance with the original and supplemental findings, and another motion for a new trial was made by the defendant and denied. The defendant then appealed from the final judgment, and that appeal has been consolidated with the appeal from the interlocutory judgment.

The appellant first contends that the court erred in finding that none of respondent's causes of action are barred by the statute of limitations, since the court had earlier ruled that her cause of action for reformation was so barred. The earlier ruling was made just before the trial proceeded on the merits. The evidence later received was sufficient to have justified a change in that ruling. The matter is immaterial, however, since the court did not grant relief on the reformation cause of action.

It is next contended that the court erred in reforming the agreement and deeds to provide that respondent owned a life estate with respect to an undivided half interest in the property itself, whereas the agreement gave her only the right to share equally in the net income during her life. It is argued that the court in effect reformed and modified the agreement under the guise of granting declaratory relief; and that the court should have declared only that the language of the agreement and deeds meant exactly what the respondent had indicated they meant in pleading her reformation cause of action.

The court did not reform or modify this agreement. As the court said in *Putnam* v. *Putnam,* 51 Cal.App.2d 696 [125 P.2d 525] : ''A declaration of the rights and obligations under a contract which results in a reformation is but a determination of the intention of the parties and of the legal effect of the contract, not a modification of its terms.'' In her reformation cause of action the respondent alleged that the attorney for the defendant, who prepared the papers, intended to use language therein that would create in respondent a life estate in and to an undivided one half interest in said real property; that it was intended by both parties

that language having that effect would be used, and that both parties signed the papers believing that words and language were used which conveyed or reserved such a life estate to the plaintiff. In the declaratory relief cause of action it was alleged that upon reading the agreement to them defendant's attorney represented to them both that the effect of the papers was to change plaintiff's interest in the property to a life estate in and to an undivided one half interest in the partnership property for and during her life, and that among other things she would be entitled to one half of the income from the whole of the property during her lifetime. It was conceded by both parties in the pleadings and at the trial that the respondent was entitled to one. half of the net rents during her lifetime. While the respondent may not have understood the technical meaning and effect of some of the language used in the agreement the evidence, with the reasonable inferences therefrom, fully supports the finding and conclusion that she was told and understood that she was to have a life interest in one half of the property which would entitle her to one half of the net income, and that both parties intended at that time that the agreement and deeds should accomplish that purpose. That intention not only appears from the evidence but is somewhat confirmed by the agreement itself, which provides that no indebtedness shall be contracted without the concurrence of both parties; that each party is to sign any necessary renewal of the existing indebtedness; that the parties, and not the appellant alone, shall dispose of all of the property except Parcels One and Two, and use the proceeds to clear the debt on Parcels One and Two; and that in the event of illness, where the income is not sufficient, each party may invade the corpus. ■■ No specific words are necessary to create a life estate and as said in *Estate of Franck*, 190 Cal. 28 [210 P. 417], "It is also equally well settled that the unqualified gift of the rents, issues and profits of a fund or property, real or personal, amounts to a gift of the fund or property itself." While this was a division of property rather than a gift, there was here a provision reserving and giving to the respondent an unqualified right to receive one half of the net proceeds during her lifetime, and the same principle should be here applied. ■ In granting declaratory relief it was the right and duty of the court to declare the meaning of the contract, and to construe the language used, in accordance with the intent of the parties

as disclosed by the evidence. ■ These papers were prepared by appellant's counsel without notice to or consultation with the respondent. Under settled rules any uncertainty or amb·guity therein should be resolved in respondent's favor; and if different constructions would be equally proper the one most favorable to her should be adopted. While some inconsistencies appear in the complaint, as between the various causes of action, the respondent's contentions clearly appear throughout her pleading and, in this equitable action, the court was justified in construing the rights and duties of the parties in accordance with the evidence and the clear intent of the parties.

■ It is next contended that the court erred in giving the respondent a lien to secure the payment of that part of the amount due her which represented one half of the amount paid by the appellant, from the income, to reduce the principal sum of the encumbrance on the main property. It is argued that the granting of such a lien was not within the issues presented; that if this had been pleaded appellant might have shown that it was contrary to the agreement of the parties; and that the court had previously found that she was entitled to charge for "debt reduction." The matter was sufficiently within the issues raised by the pleadings and, in any event, no specific pleading was necessary under the circumstances. (*Garcia* v. *Venegas,* 106 Cal.App.2d 364 [235 P.2d 89]; *Dool* v. *First Nat. Bank,* 207 Cal. 347 [278 P. 233].) It clearly appeared that the appellant had used a large part of the income to reduce the trust deed indebtedness on Parcels One and Two, although the agreement specificially provided that other proceeds should be used for that purpose. While a minute order had previously stated a finding that she was entitled to charge "debt reduction and interest," that was an error which the court could correct, and its final finding and judgment are controlling. If the appellant was entitled to use the income to pay off existing liens, thus increasing her own interest, the clearly expressed purpose of the contract would be largely defeated. The court was correct in disallowing this charge, and in doing equity could give the respondent a similar lien, by way of subrogation, in place of the lien which had been wrongfully discharged.

It is next contended tht the court erred in finding that the appellant was not entitled to deduct amounts for "depreciation" in arriving at the amount of net income. It is admitted that the contract made no specific reference to de-

preciation, and that the appellant had charged on her books $10,370.75 for such depreciation. It is argued that the accountant who prepared statements for the appellant set up an allowance for depreciation, and that for about ten years, including the prior partnership, the parties abided by his judgment and acquiesced in this charge. There was evidence that the respondent was not given copies of the statements prepared by that accountant, and she had not consented to such a charge. Depreciation is a mere accounting charge and does not represent the actual expenditure of money. No mere question of bookkeeping, or of income taxes, is involved in this connection, and no good reason appears why a life tenant should be charged with depreciation in determining the net income from property.

It is next contended that the court erred in not permitting the appellant to deduct from the gross income the amount she charged as a manager's salary. It is argued that many years before the parties had told each other that they never intended to marry; that while they lived together the respondent did her part of the housework; that after respondent's marriage in 1947 the appellant had to do all of the work which the respondent had previously done; that beginning in 1948 the appellant paid herself $200 a month to compensate herself for the additional work she was doing; and that it was only fair that she should receive the amount which the respondent had previously been receiving. The $100 a month previously paid to both was a partial division of income, and was clearly not intended as compensation. A cotenant is not ordinarily entitled to compensation for services in managing or taking care of common property, in the absence of an express agreement or a mutual understanding that such services should be paid for. (*Combs* v. *Ritter,* 100 Cal.App.2d 315 [223 P.2d 505].) The appellant had collected the rents, paid the expenses and managed these properties for several years before 1944 and continued to do the same thereafter. The respondent ceased living with the appellant in September, 1944, and no claim for compensation was made by the appellant until 1948, when it was admittedly taken without consultation with the respondent. The respondent was a cotenant to the extent of her life tenancy and, under established rules, the court was justified in refusing to allow that charge in view of the evidence presented.

It is next contended that the court erred in finding that the respondent was entitled to have certain of her medical

expenses paid out of the ''corpus,'' instead of regarding this amount as advances made by the appellant. This finding was in accordance with the contract provision, and is amply supported by the evidence that no net income was then available for that purpose.

It is further contended that the evidence was insufficient to justify the finding that the respondent was entitled to an accounting. It is argued that the books and records which ''were kept in a filing cabinet'' in appellant's home were available to the respondent at all times; that had the respondent sent someone to examine those books and records such person could have obtained the same information which the referee later obtained; and that it is unjust to allow the respondent to have an investigation and audit made partially at the expense of the appellant. It is difficult to understand this contention. The evidence shows that there was a confidential relationship between these parties; that the records were kept by the appellant, and the statements provided for in the contract were not furnished to the respondent; that the appellant had paid some personal expenses from the income received, and had commingled some of her personal funds with the rents and income she had collected from the property; and that she had made some improper charges. ■ Under the circumstances shown an accounting was absolutely essential in order to enable the court to determine the respective rights of the parties. While an accounting was prayed for, some contention is made that a limited accounting only, rather than a general accounting was asked for. An analysis of the pleadings does not support this contention and, moreover, in such an action as this when the court deems it necessary to have an accounting to determine the rights of the parties it has the power to so order. (*Braden* v. *Lewis*, 119 Cal.App.2d 84 [259 P.2d 16].)

The findings are sufficiently supported by the evidence, with the reasonable inferences therefrom; the court's construction of the meaning of the contract as intended by the parties is a reasonable one; and the record strongly indicates that the judgment entered is a just one.

The judgments are affirmed.

Griffin, J., concurred.

Petitions for rehearings were denied November 20, 1956, and appellant's petition for a hearing by the Supreme Court was denied December 19, 1956.