361 F.2d 417
 66-1 USTC P 9447
 COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Lillian E. YAEGER, Respondent.
Emma M. HEBER, and Estate of Henry D. Heber, Deceased, Emma
M. Heber, Administratrix, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 20085, 20086.
 United States Court of Appeals Ninth Circuit.
 May 11, 1966.
 
 1
 F. Edward Little, Los Angeles, Cal., for petitioner Heber.
 
 
 2
 Richard A. Rattray, Jordan, Dodge, Kemble & Leveridge, Santa Ana, Cal., for respondent Yaeger.
 
 
 3
 Richard A. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Melva M. Graney, Carolyn R. Just, Attys., Dept. of Justice, Washington, D.C., for petitioner and respondent Comm. I.R.
 
 
 4
 Before MERRILL and BROWNING, Circuit Judges, and TAYLOR, District judge.
 
 FRED M. TAYLOR, District Judge:
 
 5
 These companion cases are before this court on petitions for review of the decisions of the Tax Court of the United States. The petition for review filed by Mrs. Heber involves federal income taxes for the years 1956, 1957, and 1958. The petition for review filed by the Commissioner of Internal Revenue (Commissioner) is for protective purposes and involves federal income taxes of Lillian Yaeger for the years 1955 through 1958. This court has jurisdiction of the appeals under Section 7482 of the Internal Revenue Code of 1954.
 
 
 6
 A summary of the pertinent facts as stipulated by the parties and found by the Tax Court are:
 
 
 7
 The petitioner, Mrs. Heber, a registered nurse, and respondent, Miss Yaeger, a real estate broker, had been friends and companions since 1928. During the year 1935 and for several years thereafter they resided together in Fullerton, California. On September 2, 1939, Mrs. Heber and Miss Yaeger entered into a partnership agreement by the terms of which they acknowledged that they were the equal owners of certain real properties; that they intended to acquire additional properties in which they were to have an equal interest; that they would own and operate the property as equal owners, and that should either partner become dissatisfied, or desire to withdraw, such partner should not be permitted to do so before making a proposal either to sell or purchase the undivided one-half interest in the fee ownership of properties owned by the other party; that in the event no sale occurred within a period of thirty days, the partnership was to be dissolved by operation of law; and that in the event of dissolution of the partnership, the properties or the proceeds thereof were to be divided equally between them.
 
 
 8
 On August 10, 1944, Mrs. Heber and Miss Yaeger executed a termination agreement which recited that they had formed a partnership on September 2, 1939, relating to their property holdings. The termination agreement specifically described the various properties and then provided:
 
 
 9
 The parties hereto (Heber and Yaeger) desire to clarify and modify the terms of said documents (the deeds to the various properties and the partnership agreement), as well as covenant and agree by the terms hereof to partition and divide said properties, as hereinbefore set forth.
 
 
 10
 The termination agreement then provided that certain properties were to conveyed to Miss Yaeger, with a life estate in and to one-half of the rents, issues and profits being reserved to Mrs. Heber for and during the period of her natural life; that other properties were to be sold and the proceeds applied toward liquidating the existing indebtedness on the property being retained; that each party was entitled from September 1, 1944, to draw at least $100.00 per month against the net income to which each might be entitled; that if the undivided one-half of the net income should be insufficient to care for either party because of illness, want or other necessaity, or to obtain necessary medical or other assistance, so much of the principal or corpus should be used as necessary for such purpose; that any further indebtedness on the properties could be incurred only with the consent of both parties; that accurate books of account were to be kept and audited and that a written account was to be made on December 31st of each year of all assets and liabilities, receipts, disbursements and net profits, with an annual settlement of any profits due. In accordance with the termination agreement deeds were executed and recorded.
 
 
 11
 Subsequent to August 10, 1944, certain properties were sold to third parties and the proceeds were applied to reduce the indebtedness on the properties which were retained.
 
 
 12
 Parcels 1, 2, and 7 (Fullerton properties) were retained and it is the income from these properties that gives rise to the tax controversy involved in these proceedings.
 
 
 13
 In accordance with the termination agreement Miss Yaeger continued to manage and control the Fullerton properties, taking charge of collecting the rents and payiwg the property taxes and other expenses.
 
 
 14
 The Tax Court found that Yaeger's purpose in causing Mrs. Heber to execute the termination agreement was to reshuffle their interests in the partnership properties in order to reflect the fact that Mrs. Heber, because of illness, had become unable to assist Miss Yaeger in any of the affairs of the partnership. That when Heber and Yaeger executed the termination agreement, it was the belief and intention of each of them that the partnership theretofore existing between them was thenceforth terminated; that each of them was aware at that time that Mrs. Heber was to receive thereby a life estate in an undivided one-half interest in the Fullerton properties and that Miss Yaeger was also receiving, as a tenant in common, a life interest in an undivided one-half of the properties, measured by Mrs. Heber's life plus the entire ownership of the properties upon Mrs. Heber's death.
 
 
 15
 Subsequent to the execution of the termination agreement of August 10, 1944, Mrs. Heber moved to Los Angeles and Miss Yaeger remitted to Mrs. Heber the $100.00 per month as provided in the termination agreement until January 1, 1948. Thereafter Miss Yaeger ceased paying any money to Mrs. Heber with respect to her interest in the Fullerton properties and began to pay herself $200.00 per month as a manager's salary, charging this amount against the rental income produced by the Fullerton properties.
 
 
 16
 On August 4, 1949, Mrs. Heber instituted proceedings against Miss Yaeger in the Superior Court, orange County, California. In her action Mrs. Heber sought rescission of the termination agreement, reformation, declaratory relief and to quiet title. That court in an unreported opinion found, among other things, that Mrs. Heber was, by virtue of the termination agreement, vested with a life estate in and to an undivided one-half interest in the Fullerton properties for and during her lifetime; that Miss Yaeger, by virtue of the termination agreement, acceded to ownership of the remainder interest in the properties; that Miss Yaeger had not sold all of the property agreed to be sold for the purpose of paying off the encumbrances on the Fullerton properties; and that Miss Yaeger had not paid Mrs. Heber her full share of the income from the Fullerton properties. The court found that Miss Yaeger collected as rents and income from the Fullerton properties during the period in question, namely, from August 10, 1944 through December 31, 1952, the total sum of $167,998.18; that she had expended $101,926.50 for maintenance of the property leaving a net income of $66,071.68 of which Mrs. Heber was entitled to one-half, or $33,035.84; that Miss Yaeger had paid Mrs. Heber only $5,942.39, leaving a balance owing to Mrs. Heber of $27,093.45. A final judgment was entered accordingly in favor of Mrs. Heber for the sum of $27,093.45, plus interest from August 10, 1944 through December 31, 1952. On October 26, 1956, this judgment was affirmed by the District Court of Appeal, Fourth District, California, sub nom. Steeve v. Yaeger, 145 Cal.App.2d 455, 302 P.2d 704 (1956).[1] The respective interests of the parties in and to the properties in question were determined in the state court litigation. The Tax Court was bound to and did recognize the life estate interest of Mrs. Heber as determined by the state court.
 
 
 17
 In accordance with this judgment Miss Yaeger paid the amounts awarded to Mrs. Heber as follows: The sum of $9,086.39 in the year 1955, and the sum of $18,007.06 plus interest in the sum of $5,509.30 in the year 1957.
 
 
 18
 During the calendar years 1953 through 1955, the Fullerton properties had a net income, adjusted in accordance with the decision in Steeve v. Yaeger, supra, in the total amount of $31,956.76. In accordance with that decision Mrs. Heber's share thereof was $15,978.38. Payments to Heber for her share of the net income from the Fullerton properties allocable to the years 1953, 1954 and 1955 were made as follows:
 
 Year Amount
 
 19
 ---- ---------
 
 1954 $1,200.00
 1955 $1,100.00
 1956 $5,536.30
 1957 $8,142.08
 
 20
 The total amount of income received by Mrs. Heber from the Fullerton properties was $6,736.30 in the year 1956; the sum of $36,805.17 in the year 1957, and $5,031.78 in the year 1958, aggregating $48,573.25.
 
 
 21
 In her income tax for 1957 Mrs. Heber reported the receipts from the Fullerton properties of $5,840.38, and claimed of that amount $3,929.08 represented gain arising from the sale of a capital asset held more than six months. Prior to 1957 she had reported all money received by her from the Fullerton properties as ordinary income. The Commissioner, pursuant to a statutory notice of deficiency, increased Mrs. Heber's taxable income for the year 1957, after making certain adjustments, to the sum of $29,770.96. Mrs. Heber's income tax return for 1958 showed income of $5,031.78 from the Fullerton properties, of that amount $3,923.50 was reported as long term capital gain. The Commissioner determined that 'such gain is taxable as ordinary income in the amount of $3,298.74,' and increasd Mrs. Heber's taxable income by that amount.
 
 
 22
 With respect to Miss Yaeger, the Commissioner in his statutory notice of deficiencies increased her taxable income for the year 1955 $7,207.88. He explained this action by stating:
 
 
 23
 '(a) It is determined that your income from the 'Fullerton properties' totaled $11,990.62 instead of the $4,782.74 reported on your income tax return for 1955.'
 
 
 24
 The Commissioner also decreased Yeager's taxable income by the $2,400 management fee which the court in Steeve v. Yaeger, supra, ruled should be returned to the net income of the Fullerton properties. The Commissioner increased Yaeger's taxable income for the years 1956 through 1958 by determining that the entire net income of the Fullerton properties during each of these years, rather than one-half of the net income as reported by Yaeger, should be included in her taxable income. The Commissioner further determined in the deficiency notice that Yaeger was not entitled to deductions in the respective amounts of $9,086.39, and $3,766.32 during 1955 and 1957, as a result of payments on the judgment awarded Mrs. Heber in the decision of Steeve v. Yaeger, supra.
 
 
 25
 The sole issue on these appeals is as to how that portion of the rental income from the Fullerton properties which was paid to Mrs. Heber in the taxable years 1956 through 1958 should be treated. It is Mrs. Heber's contention that the termination agreement of August 10, 1944, executed by and between herself and Miss Yaeger resulted in a sale or exchange by Mrs. Heber to Miss Yaeger of her partnership interest, a capital asset, and that under Section 117 et seq. of the Internal Revenue Code of 1939 (Section 1201 et seq. of the Internal Revenue Code of 1954), she was entitled to report what she received as a capital gain. The Tax Court sustained the Commissioner's determination that the amounts paid to Mrs. Heber were taxable as ordinary income rather than capital gain.[2] This decision was based upon the approval and acceptance of the holding in Steeve (Heber) v. Yaeger, supra.
 
 
 26
 In the excellent opinion rendered by the Tax Court, it concluded:
 
 
 27
 '* * * it is clear that after the execution of the termination agreement and the various deeds mentioned therein, Heber, in lieu of her partnership interest, was left with a life estate in an individed one-half of the former partnership properties. In lieu of her partnership interest, Yaeger received (1), as a tenant in common with Heber, a present interest in the Fullerton properties, namely a life estate, measured by Heber's life, in an undivided one-half of said properties, plus (2) a future interest, namely, the entire fee interest therein upon Heber's death.
 
 
 28
 Therefore, whether we conclude (1) that Heber sold her partnership interest to Yaeger in return for a life estate in an undivided one-half of the Fullerton properties or (2) that Heber received said life estate as a liquidating distribution, in kind, upon the dissolution and termination of the partnership, Heber, nevertheless, must report, as ordinary income (reduced by any available deductions for amortization or depreciation), her 50 percent share of the net rentals produced by said properties and attributable to her life estate therein.'
 
 The Tax Court further concluded:
 
 29
 '* * * that, during Yaeger's taxable years in issue, only one-half of the net rentals generated by the Fullerton properties are includable in her gross income.'
 
 
 30
 We agree with these conclusions.
 
 
 31
 The Tax Court in the Yaeger case held that since she had made no argument on brief concerning Commissioner's disallowance of the deductions she claimed during the years 1955 and 1957 for payments made by her to Heber in the respective amounts of $9,086.39 and $3,766.32 pursuant to the judgment in Steeve v. Yaeger, supra, that she had abandoned this issue.
 
 
 32
 The Commissioner in his Reply Brief, as petitioner, concedes, and we agree, that to prevent a miscarriage of justice, the Yaeger case should be remanded for modification of the Tax Court's decision.
 
 
 33
 The Tax Court's decision in the Heber case is affirmed. The Yaeger case is remanded for modification of the Tax Court's decision in that case.
 
 
 
 [1]
 In Steeve v. Yaeger, said District Court of Appeal held as follows:
 '* * * While the respondent may not have understood the technical meaning and effect of some of the language used in the agreement the evidence, with the reasonable inferences therefrom, fully supports the finding and conclusion that she was told and understood that she was to have a life interest in one half of the property which would entitle her to one half of the net income, and that both parties intended at that time that the agreement and deeds should accomplish that purpose. That intention not only appears from the evidence but is somewhat confirmed by the agreement itself, which provides that no indebtedness shall be contracted without the concurrence of both parties; that each party is to sign any necessary renewal of the existing indebtedness; that the parties, and not the appellant alone, shall dispose of all of the property except Parcels One and Two, and use the proceeds to clear the debt on Parcels One and Two; and that in the event of illness, where the income is not sufficient, each party may invade the corpus. No specific words are necessary to create a life estate and as said in Re Estate of Franck, 190 Cal. 28, 210 P. 417, 418, 'It is also equally well settled that the unqualified gift of the rents, issues, and profits of a fund or property, real or personal, amounts to a gift of the fund or property itself.' While this was a division of property rather than a gift, there was here a provision reserving and giving to the respondent an unqualified right to receive one half of the net proceeds during her lifetime, and the same principle should be here applied.'
 
 
 [2]
 Internal Revenue Code of 1954:
 'SEC. 61. GROSS INCOME DEFINED.
 (a) General Definition.-- Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
 (2) Gross income derived from business;
 (3) Gains derived from dealings in property;
 (5) Rents;
 (13) Distributive share of partnership gross income;
 (26 U.S.C.1958 ed., Sec. 61.)'
 'SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES.
 For purposes of this subtitle--
 (3) Long-term capital gain.-- The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income.
 (26 U.S.C.1958 ed., Sec. 1222.)'