FAIRFIELD BUILDERS, INC., a corporation of the State of Delaware, and Joseph W. Remedio, Individually, Plaintiffs Below, Appellants,

v.

Andrew VATTILANA et al., Defendants Below, Appellees.

Supreme Court of Delaware.

Feb. 9, 1973.

Motion for Reargument Denied Feb. 28, 1973.

Stanley C. Lowicki, O'Donnell, Hughes & Lowicki, Wilmington, for plaintiffs below, appellants.

Arthur J. Sullivan, Morris, James, Hitchens & Williams, Wilmington, for appellee Branmar, Inc.

CAREY and HERRMANN, JJ., and SHORT, Vice-Chancellor, sitting.

CAREY, Justice:

Plaintiff-appellant, Fairfield Builders, Inc., is a Delaware corporation engaged in the business of land construction and development. The principal officer of Fairfield is Joseph Remedio.[1] Remedio had contracted with defendant-appellee, Joseph Luria, a general contractor doing business as Branmar, Inc., to complete a partially-finished shopping center on land leased from defendant appellees, Mr. and Mrs. Vattilana.[2]

The Memorandum of Agreement (hereinafter "agreement") between Remedio and Branmar was signed on June 25, 1969. The section in dispute, section 5(a), reads as follows:

"5. Joseph [Remedio] undertakes to effect savings as a result of his expertise, in connection with partially completed contracts:

(insertion added)

"(a) for services to be performed by Joseph and his organization, there shall be paid to him the total sum of Thirty Thousand Dollars ($30,000), plus one-third (⅓) of whatever savings he can effect with partially completed contracts, which shall include executed contracts, which performande [sic] has not as yet commenced."

An addendum to the agreement was signed on the same day and reads as follows:

"1. A condition precedent to Joseph's right to collect one-third (⅓) of monies saved, as provided by paragraph 5(a), shall be that the *total cost of the project* shall not exceed Four Hundred One Thousand Dollars ($401,000), exclusive of rock clauses and cost of parking and paving." (emphasis added.)

In a non-jury trial, the Superior Court below ruled that the total cost of the project under the contract was to be no more than $401,000, and Remedio's fee of $30,000 was to be included in that figure in determining the "bonus". The Court found that there was a savings to Branmar of $28,707.28. One-third of the savings, $9,569.09, was awarded to Remedio by the Court as his bonus under section 5(a) of the agreement.

Two questions are presented to this Court: (1) Did the Court below err in ruling that the "total cost of the project" was

1. Plaintiff-appellant will hereinafter be referred to as "Remedio", since he was one of the principals involved in the present contract dispute and a real party in interest.

2. The appellee will hereinafter be referred to as "Branmar."

intended to include the $30,000 fee to Remedio? and (2) Did the Court below err in refusing to award double wages to Remedio under 19 Del.C. § 1103?

I

The agreement does not explicitly state that the $30,000 fee is to be considered as part of the total cost of the project. The Court below ruled that because the agreement was ambiguous, parol evidence would be admissible to explain and define the terms of payment. It then concluded that Remedio and Luria had sufficiently reviewed the requirements of the project and that both men understood that Branmar wished to keep the total expenditures, including Remedio's fee of $30,000, for the project at or below $401,000, exclusive of rock clauses and paving; it therefore based its determination of the bonus accordingly.

In reviewing the findings of a Court in a non-jury trial, an appellate court may review the factual findings, as well as the legal conclusions, to determine whether there is sufficient evidence to support those findings. If there is, the action of the lower Court must be affirmed. Brittingham v. American Dredging Co., Del.Supr., 262 A.2d 255 (1970); duPont v. duPont, Del.Supr., 216 A.2d 674, 680 (1966).

After reviewing the present record, we find that there was sufficient factual evidence to support the holding of the Court below.

II

Remedio seeks double compensation for unpaid "wages" under 19 Del.C. § 1113,[3] which provides that:

"(a) A civil action to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action."

Remedio argues that he was an employee of Branmar in an individual capacity as a "consultant supervisor contractor" and that he therefore falls within the purview of the act.

The Court below disagreed, however, and found Remedio to be a subcontractor and not an employee as required by the act.

19 Del.C. § 1101(a)(4) defines an employee as "any person suffered or permitted to work by an employer under a contract of employment either made in Delaware or to be performed wholly or partly therein." That definition is of little help in the present case; apparently, the Legislative intent was to leave it to the Courts to decide, in any given case, whether a person is or is not an employee.

The agreement between Remedio and Branmar contemplated that Remedio's organization would supervise construction and obtain further subcontractors to complete the construction on the shopping center. The agreement was not an employment contract, but was a contract between two independent parties by which Remedio, through his company, Fairfield, would undertake to perform a service for Branmar. This contract provides a remuneration for professional services, but does not create nor contemplate an employer-employee relationship where Branmar would place Remedio, or any member of Remedio's organization, on Branmar's payroll. Most importantly, Branmar retained no power of control over the means and methods of doing the work, nor did it attempt to exercise any such power; its only concern was the result to be accomplished and the ulti-

---

3. Wage Payment and Collection Act, 19 Del.C. §§ 1101–1115. Under § 1103(d), such "liquidated damages" may be in an amount equal to the wages.

mate cost thereof. Nor was Branmar to withhold federal or state taxes and federal insurance for Remedio personally, nor provide health insurance, vacations, leave and other benefits consistent with or contemplated by a standard employment contract.

19 Del.C. § 1113 refers to employees. Obviously, the Legislature did not intend the Wage Payment and Collection Act to include those persons or firms who specifically contract to render professional services in their own individual capacity, rather than as a member of the firm or business of the other party. Just as a lawyer is not ordinarily an employee of his client and an architect is not ordinarily an employee of a developer, a subcontractor is not an employee of a general contractor.

Remedio's claim for relief under the Wage Payment and Collection Act is without merit.

### III

The appellees ask us to reverse the allowance of a counsel fee to appellants under 10 Del.C. § 3912. This contention comes too late. It was never advanced in the Court below, but was first raised in the last sentence of appellees' brief in this Court. Furthermore, the appellees filed no cross-appeal. The question is accordingly not properly before us, and we decline to consider it. Ray v. State, Del.Supr., 262 A.2d 643, 646 (1970).

The judgment below will be affirmed.

### SUPPLEMENTAL OPINION ON MOTION FOR REARGUMENT

February 27, 1973

Appellants have asked for reargument. One ground is the contention that we failed to answer two points raised by appellants, namely: (1) the Court below erred in holding that the sums paid to the first contractor were to be included in determining the amount of the bonus; and (2) the Court below erred in holding that a plaintiff's exhibit was used by Branmar as a representation of the amount previously paid to the original contractor. These questions may be quickly answered by the statement that, in our opinion, there was ample evidence in the record to justify the findings made by the Court below on these points.

Appellants also request reargument as to the other points decided by us. After careful review of the matter, we conclude that this application must be refused.

The motion for reargument is denied.