OLIVER B. CANNON AND SON, INC., a
Pennsylvania Corporation, Plaintiff
Below, Appellant, Cross-Appellee,

v.

DORR–OLIVER, INCORPORATED, a
Delaware Corporation, Barcroft Compa-
ny, a Delaware Corporation, and William
H. Rorer, Inc., a Pennsylvania Corpora-
tion, Defendants Below, Appellees,
Cross-Appellants.

Supreme Court of Delaware.

Submitted May 10, 1978.

Decided Aug. 30, 1978.

Rehearing Denied Nov. 1, 1978.

Courtney H. Cummings, Jr., Wilmington, and Richard S. Gebelein of Wilson & Whittington, P. A., Wilmington, for Oliver B. Cannon and Son, Inc.

Douglas E. Whitney and George L. Pazuniak of Morris, Nichols, Arsht & Tunnell, Wilmington, for Dorr-Oliver, Inc.

James T. McKinstry of Richards, Layton & Finger, Wilmington, and David L. Grove of Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Barcroft Co. and William H. Rorer, Inc.

Before DUFFY and McNEILLY, JJ., and BROWN, Vice Chancellor.

DUFFY, Justice:

This is an appeal and cross-appeal from a judgment entered after a bench trial on damages in the Superior Court.

## I.

Briefly, the controversy involves a dispute between Oliver B. Cannon and Son, Inc. (Cannon), plaintiff, a painting subcontractor employed by the general contractor, Dorr-Oliver, Incorporated (Dorr-Oliver), defendant, to perform work on large tanks owned and used by Barcroft Company (Barcroft) in the making of Maalox.

After a separate trial on liability, the Superior Court concluded that Cannon was liable to both Barcroft and Dorr-Oliver and, on appeal, the judgment was affirmed. *Oliver B. Cannon, Inc. v. Dorr-Oliver, Inc.*, Del.Supr., 336 A.2d 211 (1975). Complete statements of the pertinent facts relating to liability appear in the prior opinions of the Superior Court and of this Court, to which reference is made.

After remand, the Superior Court held an evidentiary hearing on the issue of damages. Upon completion thereof, the Court entered judgments in favor of Barcroft and Dorr-Oliver against Cannon in the amounts of $712,441.48 and $48,324.06, respectively with interest at 6% per annum from October 19, 1976, and denied Barcroft-Dorr-Oliver's claim for litigation expenses. Both Cannon and Dorr-Oliver then docketed appeals in this Court.

## II.

■ We first consider the appeal by Cannon. It makes nine separate and detailed arguments in· an effort to overturn the judgment of the Trial Court. In one form or another, the major part of these contentions attempts to reargue the liability issue. We regard that question as settled by the Superior Court order which was affirmed by this Court more than three years ago. We decline to reexamine the judgment establishing liability and, to the extent that Cannon seeks to argue that issue again, its contentions are without merit.

■ The Trial Court found that Cannon is responsible for all tank lining repairs and all lining replacements which were made. Implicitly, that finding defines the scope of the work necessary under the warranty, which was an issue reserved in our prior opinion. See 336 A.2d at 215. Since there is evidence to support such finding, (See, for example, evidence produced by Cannon recommending that total relining of the tanks was the cheapest way to correct the defects) we affirm it. *Fairfield Builders, Inc. v. Vattilana*, Del.Supr., 304 A.2d 58 (1973).

## III.

Turning now to the judgment in favor of Barcroft, it appears that the amount awarded by the Trial Court was computed as follows:

A. Inducement money and expenses (so-called)

| | | |
|---|---|---|
| (1) Allowance for this Item | $94,306.34 | |
| (2) Interest on Item (1) | 34,518.26 | |
| (3) Reimbursement of amount paid to U. S. Testing Co. | 1,842.50 | |
| (4) Interest on Item (3) | 677.84 | |
| (5) Total | | $131,344.94 |

B. Loss of Profits

| | | |
|---|---|---|
| (1) Allowance for this Item (including depreciation in the amount of $106,483.13) | 455,463.58 | |
| (2) Interest on Item (1) | 125,632.96 | |
| (3) Total | | 581,096.54 |
| C. Amount of the Judgment | | $712,441.48 |

Three items included in the computations are disputed in this appeal, and we consider them, *seriatim*.

## A.

### Inducement Money and Expenses

The Trial Judge held that, without prejudice and with a full reservation of rights, Barcroft paid Cannon $94,306.34 to induce it to repair and replace defective and negligently installed linings in the tanks.

On appeal, Cannon argues that it did not induce Barcroft to pay this sum for repair work but, rather, that it was money owed to Cannon for work done in June, July and August of 1970.

We note first that the amount of this item is not in dispute. The parties disagree as to whether any money is owed but, if there is liability, the amount thereof is not contested.

■ As we read the record, this so-called "inducement money" paid to Cannon really amounts to the cost of repairs made during the plant shutdown. Since Cannon's responsibility for such cost has been established, its argument on this aspect of the appeal is therefore without merit. Thus, the Trial Court properly concluded that

Cannon owes Barcroft the money paid by it for corrective work, including interest and expenses, totalling $131,344.94.

## B.

### Depreciation

In computing loss of profits, the Trial Court allowed Barcroft $106,483.13 for depreciation of its buildings and equipment. The amount was based upon expert testimony in which the straight-line method of depreciation was offered as the appropriate measure of loss.

Cannon contends that depreciation is not a proper element of damages in this case because it is a bookkeeping charge which does not reflect actual expenditure.

Depreciation is usually regarded as a decline in value of an asset, resulting from wear and tear, action of the elements or obsolescence. *Webster's New International Dictionary* (2 ed.). Cf. *Graham County Electric Coop. v. Town of Safford,* Ariz. Supr., 84 Ariz. 15, 322 P.2d 1078 (1958). Some or all of the factors causing depreciation usually continue during a period when a plant is inoperative. Cf. *United States Steel Corporation v. United States,* S.D. N.Y., 316 F.Supp. 990 (1970).

■ In this loss-of-profits case, we conclude that Barcroft is entitled to recover for any actual loss caused by Cannon's breach, including any actual decline in value or "depreciation" of the plant while it was out of production. But Barcroft's obligation is to establish that loss by showing what, in fact, the decline was. In our judgment, decline (measured by before and after values) cannot be established entirely by reference to an accounting technique, no matter how reliable it may be for other purposes.

The straight-line method of depreciation is a technical accounting procedure for allocating an item's cost over its useful life. 26 A *C.J.S.* Depreciation, p. 493, and cases cited therein. But it does not necessarily represent the actual loss in value of an item.

See *Cassady v. McKinney,* Fla.App., 296 So.2d 94 (1974); *Steeve v. Yaeger,* Cal.App., 145 Cal.App.2d 455, 302 P.2d 704 (1954). And it has been said that "the straight-line-method is defensible if the use obtained from the asset is roughly equal in each year over its useful life." McGraw-Hill, *Handbook of Modern Accounting,* § 18–10 (1970).

■ We recognize that the straight-line method is commonly used in financial statements, tax returns and other similar documents, but it is an improper basis for computing damages in this case, which is not concerned with recovery of costs over useful life, nor with an equitable allocation of "use" costs over the shutdown period. In short, proof by reference to an arbitrary accounting rule is not an acceptable way of establishing actual loss resulting from depreciation in this litigation which seeks compensation for loss of profits.

■ It follows that so much of the judgment for Barcroft which is based on depreciation computed by the straight-line method must be reversed, and the case remanded for specific findings as to the actual depreciation to Barcroft's buildings and equipment during the four months in which the plant was shutdown. Any allowance to Barcroft for such depreciation must also take into consideration any increase in expected life resulting from the repair work which Cannon is ordered to provide and pay for in this litigation.

## C.

### Loss of Profits

The Trial Court awarded Barcroft the sum of $581,096.54 in lost profits, including an allowance for depreciation (which we have just reviewed).

It appears that the Barcroft plant had been in operation for about 5 months prior to the 1970 shutdown; during that period it produced the following quantities (in pounds) of magnesium hydroxide paste and aluminum hydroxide gel:

| | Magnesia | Alumina |
|---|---|---|
| January | 174400 | 185200 |
| February | –0– | 101600 |
| March | 352000 | 408800 |
| April | 296400 | 571200 |
| May | 328800 | 777200 |

Averaging the monthly production of each material over the 3 month period immediately prior to shutdown (that is, March, April and May), and then multiplying each such figure (325,733 magnesia; 585,733, alumina) by 4 (the number of months the plant was shutdown), the Trial Court arrived at a theoretical production for each chemical, had the plant been in operation. The Court then multiplied each total by the selling price of each chemical[1] to compute Barcroft's estimated total income from sales during the shutdown. Finally, subtracting Barcroft's avoidable cost of production from total income, the Trial Court arrived at a net of $455,463.58 as Barcroft's lost profit, exclusive of interest in the amount of $125,-632.96.

■ As we have emphasized, it has been adjudicated that Cannon bears the responsibility for Barcroft's losses resulting from the shutdown, including loss-of-profits. We recognize the difficulties inherent in making that computation for a relatively new business, but it appears to us that the Trial Court's calculations were based on an arbitrary selection of a base period which may not fairly reflect Barcroft's actual losses. We say this because we are unable to determine from its opinion what factors the Court considered and rejected in choosing the period.

As noted, the Trial Court selected the average monthly production output for the 3 month period prior to shutdown as the basis for extrapolating production during the close in operations. That produced a facially questionable result when tested against other time periods which might have been selected. For example, if the 4 month period prior to shutdown is used, Barcroft's estimated average monthly production of magnesia is 244,300 pounds, and

of alumina, 464,700 pounds—both are much lower figures than those adopted by the Trial Judge. If a 5 month period is selected (including the months of January and February when Barcroft had losses) the averages are reduced even more—230,320 pounds per month of magnesia; 408,802 pounds per month of alumina.

The significant differences among these averages indicates the difficulty of selecting an appropriate prior period which will fairly indicate what Barcroft would have produced during the four months shutdown. Since the inquiry is an attempt to determine a phantom production, any of the base periods is, at best, only a criterion for making the estimate. It seems to us desirable to eliminate the uncertainty in projecting production on this basis, if there is an acceptable alternative available with a more reliable fact foundation.

■ Barcroft is a wholly owned subsidiary of defendant, William H. Rorer, Inc. (Rorer), the manufacturer of Maalox, in which magnesium hydroxide paste and aluminum hydroxide gel are important components. Rorer had a requirements contract with Barcroft, and, as we understand the record, Barcroft sold its entire production of both chemicals to Rorer. For that reason, Rorer's requirements during the shutdown period may be the real key to what Barcroft would have produced. When Rorer was unable to secure the chemicals from Barcroft, it was obliged to purchase them from others. The known quantities of such purchases during the shutdown period seem to provide a more certain guide to what Barcroft would have produced than do estimates based entirely upon a past, limited production period—and which leads to significantly different results by a change of even one month in the base period, and which gives no recognition to the limited market for Barcroft's production. Any evidence of a market for Barcroft's production other than Rorer's own needs is, of course, relevant to this issue. And so is evidence as to stockpiling of either chemicals or both.

---

1. It appears to be undisputed that the per pound selling prices were, respectively, $.1534 for magnesia, and $.1091 for alumina.

Given the significance of the production figures in the computation of lost profits, we conclude that a remand is necessary to do justice. Specifically, the Trial Court is directed to consider and make findings as to whether Rorer's requirements for magnesia and alumina during the period of shutdown is a reasonable basis for determining what Barcroft's production would have been if the Court concludes that extrapolation of Barcroft's production during a period prior to shutdown is a more equitable basis to use in the computation of lost profits, it shall state the reasons therefor, including the factors considered and rejected in selecting the base period.

## IV.

As to Dorr-Oliver's judgment against Cannon, that is based on the following computation of damages:

| | |
|---|---:|
| (1) Employee time | $19,703.14 |
| (2) Employee expenses | 4,354.16 |
| (3) Payments to third person | 9,186.67 |
| (4) J. Langer's time and expenses | 2,288.43 |
| (5) Total | $35,532.40 |
| (6) Interest on Item (5) | 12,791.66 |
| (7) Total | $48,324.06 |

Cannon has not demonstrated any reversible error in this judgment or the computations on which it is based. Accordingly, the order of the Superior Court in favor of Dorr-Oliver will be affirmed.

## V.

Finally, we consider the cross-appeals filed by Barcroft and Dorr-Oliver wherein they argue that the Trial Court erred in denying their respective claims for attorneys' fees and litigation expenses. They rely upon the indemnification clause in the Cannon—Dorr-Oliver purchase-order contract.[2] The argument is that, Cannon from its own "acts or omissions . . . in connection with the performance of the Work", has caused "damages to . . . property" resulting in the "causes of action" under litigation and, therefore, Barcroft and Dorr-Oliver are entitled to be held harmless for expenses incurred as a result of these causes of actions. The appellants rely on this Court's opinion in *Eastern Mem. Con., Inc. v. Gracelawn Mem. Park, Inc.*, Del.Supr., 364 A.2d 821 (1976).

A contract of indemnity is construed to give effect to the parties' intent; in other words, only losses which reasonably appear to have been intended by the parties are compensable under such contract. 41 *Am.Jur.2d* Indemnity, § 13. And, as a general proposition, attorneys' fees and expenses may be recovered pursuant to an indemnification agreement when they are "incurred as a result of defending the claims as to which indemnity was promised." *Eastern Mem. Con., Inc. v. Gracelawn Mem. Park, Inc.*, supra, at 825.

As we read the indemnity clause, it is a kind commonly found in construction contracts and is intended to protect the general contractor (and owner) from suits brought by third parties who are injured by acts of the subcontractor.

In short, it normally contemplates the need to defend against *third party* claims as opposed to claims among contracting parties *vis-a-vis* each other. In this case, however, a third party claim is not involved. Rather, the indemnitees (Barcroft and Dorr-Oliver) are asserting a claim against the indemnitor (Cannon) and defending a claim brought by the latter against them. We agree with the conclusion of the Trial Judge that the losses incurred were not within the contemplated coverage of the indemnification clause.

Since Barcroft and Dorr-Oliver did not incur expenses and attorneys' fees "as a

2. The clause provides as follows:

"SUBCONTRACTOR (Cannon) shall hold CONTRACTOR (Dorr-Oliver) and Owner (Barcroft) harmless from any and all claims, liabilities and causes of action for injury to or death of any person, and for damages to or destruction of any property, resulting from any and all acts or omissions of SUBCONTRACTOR, its agents, employees and subcontractors, in con-

nection with the performance of the Work, and shall defend any such claim asserted or brought against CONTRACTOR or Owner, provided, however, the CONTRACTOR and Owner shall have the right, without relieving SUBCONTRACTOR of any obligations hereunder, to participate in the defense of such suit if CONTRACTOR or Owner so elects."

result of defending the claims as to which indemnity was promised," *Eastern Mem. Con., Inc. v. Gracelawn Mem. Park, Inc.,* supra, their reliance on that case is misplaced, and the Superior Court correctly concluded that Cannon is not obligated to reimburse them for any of their litigation expenses or attorneys' fees resulting from the adjudications involved herein.

\* \* \*

Other arguments made by the parties have been considered and found to be without merit.

Except as otherwise stated herein, the order of the Superior Court is affirmed, and the case is remanded for proceedings consistent herewith.

## ON MOTIONS FOR REARGUMENT

DUFFY, Justice:

Cannon, Dorr-Oliver and Barcroft, respectively, have moved for reargument as to certain but separate parts of the August 30, 1978 opinion. We consider the motions, *seriatim.*

### As to Cannon

Cannon seeks reargument in two basic respects.

First, it contends that the scope of the work necessary under the warranty was significantly less than that for which the Court awarded "inducement" money and that it (Cannon) is entitled to a judgment for work performed in excess of its obligation. Since there is evidence to support the findings of the Trial Judge, the contentions are without merit. In so repeating, we note that our reference in the opinion to Cannon's recommendation for total relining of certain tanks was for illustrative purposes only; it was neither stated nor intended to be support for all findings.

Second, Cannon argues that the judgment awarded to Dorr-Oliver is not based upon competent evidence. This amounts to no more than a restatement of Cannon's original contention which we have already rejected.

### As to Dorr-Oliver

Dorr-Oliver seeks reargument of Part V of the opinion which denies its cross-appeal for attorney fees and litigation expenses. It argues that the ruling is contrary to the majority rule and should be determined by reference to Pennsylvania or Connecticut law.

 Clearly, the contract calls for performance of the work in Delaware, and the claim is based in legal theory on the "destruction of . . . property" clause in the indemnity provision. That property is, of course, located here. In the absence of an effective choice of law by the parties to the contract, we conclude that this State has such a close relationship to the transaction and the parties that we should apply Delaware law. Restatement of the Law, Second *Conflict of Law 2d* § 188, see pp. 575, 580. Two of the four parties are Delaware corporations, the property which gives rise to the claim is located here and the indemnification sought is for legal fees and expenses involved in this lawsuit. So viewed, we remain of the opinion that the indemnification clause, in this case, refers to claims by third persons, only.[1]

### As to Barcroft

Barcroft argues that the discussion and decision as to depreciation should be deleted from the opinion because, at trial, Barcroft met its burden of proving the amount of projected gross income (which would have been received but for the shutdown) and it is Cannon's obligation to show for what purpose and by what amount such income should be reduced.

The formula used by the Trial Judge in making the computations provides surface support for Barcroft's argument. But the manner of calculation, however appropriate, may not obscure the reality of what is

---

1. Indemnity is promised as to causes of action for "injury to or death of any person" and for "destruction of any property" resulting from Cannon's conduct in performance of the work.

involved. The facts are that the judgment in Barcroft's favor includes an allowance for depreciation, that the basis for such allowance was litigated in this Court and was determined to be erroneous. And the bottom line is that Barcroft's judgment for lost profits must be set aside and the depreciation factor recomputed in accordance with our opinion.

All motions for reargument are denied.