# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DEERE & COMPANY, a Delaware
corporation,

        Plaintiff,

        v.

EXELON GENERATION
ACQUISITIONS, LLC, a Delaware
limited liability company,

        Defendant.

) ) ) ) ) ) ) ) ) ) ) ) ) )

C.A. No. N13C-07-330 MMJ CCLD

Submitted: August 18, 2016
Decided: November 22, 2016

Upon Plaintiff's Application for Fees, Expenses, and Interest
**GRANTED IN PART**
**DENIED IN PART**

## OPINION

Peter J. Walsh, Jr., Esq., Matthew F. Davis, Esq. (Argued), Jacob R. Kirkham, Esq., Potter Anderson & Corroon LLP, Attorneys for Plaintiff Deere & Company

David J. Margules, Esq., Geoffrey A. Kahn, Esq. (Argued), Matthew A. White, Esq. (Argued), Ballard Spahr LLP, Attorneys for Defendant Exelon Generation Acquisitions, LLC

**JOHNSTON, J.**

## PROCEDURAL CONTEXT AND FACTUAL BACKGROUND

This litigation arises from an alleged breach of the Purchase Agreement ("Purchase Agreement") in 2010 between Plaintiff Deere & Company ("Deere") and Defendant Exelon General Acquisitions, LLC ("Exelon"). The Purchase Agreement involved the sale of Deere's wind energy business to Exelon, including already-operating wind farms as well as wind farms at different stages of development. The Purchase Agreement included a Power Purchase Agreement ("PPA"). A PPA is necessary for the viability of a wind farm development project. It is a contract to buy the electricity generated by the wind farm and secures revenue for the project.

On February 5, 2016, Deere and Exelon filed Cross Motions for Summary Judgment. By Memorandum Opinion dated June 2, 2016, the Court granted Deere's motion for Summary Judgment and denied Exelon's motion for Summary Judgment. The Court held that Deere did not breach the Purchase Agreement and that Exelon was not entitled to recoupment of damages. On June 16, 2016 Deere filed this Application for Fees, Expenses, and Interest.

## ANALYSIS

### Is Deere Entitled to Attorneys' Fees Pursuant to § 9.2 of the Purchase Agreement?

Delaware typically follows the "American Rule." The American Rule

1

provides that litigants generally are responsible for their own litigation costs.[1] An exception exists in contract litigation where a fee-shifting provision is present. The fee-shifting provision must be a clear and unequivocal agreement in connection with a dispute between parties involving a failure to fulfill obligations under the contract.[2]

Section 9.2 of the Purchase Agreement contains a unilateral fee-shifting provision:

> Obligations of [Exelon]. (a) From and after the Closing, [Exelon] shall *indemnify*, defend and hold harmless [Deere] . . . from and against any and all Losses incurred by [Deere] by reason of, arising out of, resulting from or related to: . . . (ii) any breach or nonperformance of any of the covenants or agreements of [Exelon] contained in this Agreement . . . . [emphasis added]

This Court held in *TranSched Systems Limited v. Versyss Transit Solutions, LLC,*[3] that the term "indemnify" in standard indemnity clauses applies to third party actions.[4] Standard indemnity clauses are not presumed to apply to first-party claims. Otherwise, a typical indemnification provision would "swallow the American Rule."[5] In order for an indemnification provision to cover fee-shifting among parties, the contract

---

[1] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007).
[2] *Id.*
[3] 2012 WL 1415466 (Del. Super.).
[4] *Id.*; *see Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1165 (Del. 1978) (stating that indemnity clauses normally apply only to third party claims).
[5] *Senior Hous. Capital, LLC v. SHP Senior Hous. Fund, LLC*, 2013 WL 1955012, at *44 (Del. Ch.).

must specifically state that requirement.[6]

No such language exists in the Purchase Agreement indemnification provision. Instead, Section 9.2 broadly establishes that Exelon will "indemnify, defend and hold harmless [Deere] . . . from and against any and all Losses . . . related to . . . any breach or nonperformance [of the Agreement]."

In *Chase Manhattan Mortgage Corporation v. Advanta Corporation*, the United States District Court for the District of Delaware analyzed an indemnification provision similar to the clause at issue in this case.[7] The *Chase* indemnification provision provided that: "[T]he Company [Advanta] shall indemnify and hold buyer [Chase] . . . harmless from and against any Losses suffered . . . resulting or arising from any breach of any representation or warranty on the part of the Company . . . under this Agreement . . . ."[8] The District Court held that the indemnification clause in question was intended to apply to third party claims, and not to claims between parties.[9]

Unlike Section 9.2 of the Purchase Agreement, Section 2.6(c) and Section 2.5(d) of the Purchase Agreement contain specific fee-shifting

---

[6] *Id.*
[7] 2005 WL 2234608 (D. Del. 2005).
[8] *Id.* at *22.
[9] *Id.*

3

language. Section 2.6(c) expressly provides: "The fees, costs and expenses of the Independent Engineer . . . shall be borne by the party which, in the conclusive judgment of the Independent Engineer, is not the prevailing party." Similarly, Section 2.5(d) provides: "The fees, costs and expenses of the Auditor . . . shall be borne by the party which, in the conclusive judgment of the Auditor, is not the prevailing party . . . ."

There is no specific language that must be used in order for an indemnity provision to provide for recovery in first-party actions.[10] However, the parties' use of specific fee-shifting language in Section 2.6(c) and Section 2.5(d) of the Purchase Agreement, and their failure to include such language in Section 9.2 of the Purchase Agreement, indicates a lack of intent to create a clear and unequivocal agreement to shift fees in first-party actions.

The Court finds that Section 9.2 of the Purchase Agreement does not create a clear and unequivocal agreement to shift fees to Exelon in connection with a dispute between parties to the contract, regarding obligations under the Purchase Agreement. Therefore, Deere is not entitled to indemnification of its attorneys' fees.

---

[10] *TranSched,* 2012 WL 1415466, at *2.

4

### *What is the Date Upon Which Pre-Judgment Interest Should Begin to Accrue?*

Pre-judgment interest began to accrue upon the "Completion of Development and Commencement of Construction" as provided in the Purchase Agreement. The Purchase Agreement sets forth two ways in which the "Completion of Development and Commencement of Construction" can occur. Section 2.6(a) provides that the "Completion of Development and Commencement of Construction" will be satisfied if five conditions are met. The conditions include: (i) all occupancy agreements and permits obtained; (ii) all turbine supply agreements and other material agreements needed to commence construction executed; (iii) all interconnection agreements secured; (iv) the PPA relating to the project agreed; and (v) on-site construction of roads and foundations, as well as the construction of the initial wind turbine for the project commenced.

Section 2.6(b) of the Purchase Agreement provides that the "Completion of Development and Commencement of Construction" will occur upon the attainment of the Commercial Operation Date. It is undisputed that the "Commercial Operation Date" is December 18, 2012 and that the "Completion of Development and Commencement of Construction" is June 11, 2012.

Deere contends that pre-judgment interest began to accrue on June 11, 2012. Exelon argues that pre-judgment interest began to accrue on December 18, 2012.

Exelon contends that Deere is estopped from pursuing June 11, 2012 as the

accrual date for pre-judgment interest because Deere used the "Commercial Operation Date" as the operative date throughout litigation. The parties also dispute whether the five conditions precedent listed in Section 2.6(a) of the Purchase Agreement have been satisfied.

In order to rule that June 11, 2012 is the date upon which pre-judgment interest should begin to accrue, the Court would need to consider disputed evidence. The Court declines to do so. Such evidence would be outside the record developed prior to the cross-motions for summary judgment.

Further, it appears that the fifth benchmark set forth in Section 2.6(a) was not satisfied by June 11, 2012. This benchmark requires that the foundation for the initial wind turbine be constructed. It is undisputed that as of June 11, 2012, zero percent of the construction on the initial wind turbine had been completed.

Therefore, the Court finds that the pre-judgment interest start date is December 18, 2012.

## CONCLUSION

The Court finds that Deere is not entitled to indemnification of its attorneys' fees. The indemnity provision provided in Section 9.2 of the Purchase Agreement does not create a clear and unequivocal agreement for indemnification of attorneys' fees in first-party actions. The Court also finds that pre-judgment interest began to accrue as of the "Commercial Operation Date" on December 18, 2012.

However, as the prevailing party, Deere is entitled to litigation costs as provided by the Superior Court Civil Rules.[11] Upon submission of its recoverable costs by Deere, the parties shall confer for the purpose of reaching an agreement on reasonableness.

**THEREFORE,** Deere's Application for Fees, Expenses, and Interest is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston

---

[11] Super. Ct. Civ. R. 54(d).